Chief Judge Conway.
This is an appeal by the plaintiffs, as of right, from a judgment, entered upon an order of the Appellate Division, Fourth Department, which unanimously modified, on the law, an order of the Supreme Court, Onondaga County, at Special Term, (1) dismissing the complaint on the merits, and'(2) ordering “ that the action of the New York State Teachers Retirement System in adopting a mortality table on or about January 9th, 1946, according to the mandate of subdivisions 4 and 5 of Section 508 of the Education Law, and computing the actuarial equivalent of the contributions of. members thereafter *5 retiring accordingly is legal and valid. ’ ’ The Appellate Division struck out the paragraph dismissing the complaint “ on the ground that the dismissal of the complaint is inconsistent with the declaration of rights ’ ’. In all other respects the judgment of Special Term was affirmed.
This is an action for a declaratory judgment brought by plaintiffs on behalf of themselves and all other schoolteachers in the State of New York similarly situated. They challenge the validity of the action of the defendant, the New York State Teachers Eetirement System, in adopting on or about January 9, 1946, an actuarial table for computing the annuity benefits of the members of the defendant pursuant to subdivisions 4 and 5 of section 508 of the Education Law of the State of New York. Their contention is that the action of the defendant constitutes a breach of the contractual relationship established by section 7 of article V of the Constitution of the State of New York, as to members of the retirement system prior to the effective date (July 1, 1940) of the constitutional provision.
The complaint alleges, and the answer admits, that since 1920 the Education Law has established a retirement system for public schoolteachers within the State whereby the teachers make regular contributions to a retirement fund and receive in return upon their retirement an annuity; that the plaintiffs have made the required contributions, the plaintiff Birnbaum since 1935 and the plaintiff Cate since 1922; that they are eligible to retire after having completed 25 years of service and having attained the age of 60 years or over; and that the mortality table adopted on January 9, 1946 reduces by approximately 5% the amount to be paid to the plaintiffs pursuant to the table in use on July 1, 1940, when section 7 of article V of the Constitution went into effect.
The answer pleads two affirmative defenses. The first is that the plaintiffs have no present interest in the subject matter of the action and will have none until and when, if ever, they seek retirement and apply for their retirement benefits. The second is that subdivision 4 of section 508 of the Education Law mandates the periodical adjustment of annuity benefits payable upon retirement according to mortality and actuarial tables adopted pursuant to subdivisions 4 and 5 of section 508 of the Education Law, and that such section constitutes and forms *6 part of the contract between each member of the retirement system and the New York State Teachers Retirement System.
Special Term rejected defendant’s defense that the plaintiffs did not have standing to ask for a declaratory judgment. The court wrote: “ Neither of the plaintiffs has resigned or applied for retirement. Also recognized, is the possibility as urged by the defendant, that one or both of the plaintiffs may cease their employment as teachers in the public school prior to attaining retirement status, in which event they could withdraw their accumulated contributions to the pension system and the mortality tables in effect would have no bearing. However, the security offered by membership in the retirement system is generally regarded as an inducement to employment in State service or in the public schools. The value of retirement benefits and prospective rate of payment, especially in the face of continued inflation, is of vital concern to the plaintiffs and might well be the determining factor in their decision to continue in the teaching profession, or seek more lucrative employment.”
The foregoing reasoning is sound and we think that nothing more need be said herein with respect to the plaintiffs ’ standing to prosecute this action.
Insofar as the merits of the case are concerned, Special Term ruled in favor of the defendant stating, in part: “ The right of an employee member of the retirement system in respect to the rate of payment of annuity benefits becomes fixed upon retirement and not at the time he becomes a member of the system, or even when he has attained eligibility. The contractual relationship created by section 7 of article V of the Constitution imposes upon the Teachers’ Retirement System the obligation to pay to the members upon retirement, a pension as additional compensation for services rendered in the past, and an annuity based upon the member’s contributions. Prior to retirement for superannuation the member’s rights are inchoate. ’ ’
Under the Teachers Retirement System a ‘ ‘ retirement allowance ” is made up of two separate and independent parts: (1) a ‘ ‘ pension ’ ’ which is provided from contributions made by the employer, and (2) an “ annuity ” which is provided from contributions made by the member (Education Law, § 501, subds. 12,13,14).
*7 The “ pension ” part of the “ retirement allowance ” is not involved in this case. Mortality tables are not involved in the computation of the ‘ ‘ pension ’ ’ paid on superannuation retirement because the “pension ” consists of: “ One quarter (%) of his [the member’s] final average salary or if his total service is less than twenty-five years, a pension of one one-hundredth (1/100) of his final average salary multiplied by the number of years of total service ” (Education Law, § 510, subd. 2, par. b).
The computation of the ‘1 annuity ’ ’ part of the 1 ‘ retirement allowance ” does involve the use of mortality tables. The Education Law (§ 510, subd. 2, par. a) provides that the “ annuity * # * shall be the actuarial equivalent of his accumulated contributions at the time of his [the member’s} retirement ’ ’.
The term “ actuarial equivalent ” has reference to the mathematical formula for computing annuity payments according to the mortality table calculated and adopted pursuant to the provisions of subdivisions 4 and 5 of section 508 of the Education Law.
The issue in this case relates solely to the use of new mortality tables to compute the “annuity” which is payable upon retirement from funds contributed by the member. When the Teachers Retirement System adopted new mortality tables in 1946, the new tables were made applicable to the computation of all annuities of all members who had not previously retired. The new tables, as mentioned earlier, have the effect of reducing the annuities of all members of the system by approximately 5%.
As a practical matter, the controversy here comes to this: Plaintiffs argue that the contractual arrangement which the Constitution envisaged was the usual annuity policy whereby an insurance company, on the day the policy is issued, agrees that it will pay periodically a fixed and stated amount commencing on a certain date and that, viewed in that light, it was intended that a teacher who was a member of the Retirement System on July 1, 1940, after making the required contributions to the Retirement System over the required period of time, should receive an annuity computed from mortality tables in use on July 1, 1940 (the date the constitutional amendment became effective). The defendant Retirement System, on the other hand, maintains that it was intended that the Retirement Svs *8 tem should determine, at the time of retirement, the amount of annuity which the member’s contributions will purchase at the time of retirement, employing the mortality table in effect at the time of making such calculation.
The determination of Special Term, in favor of the Retirement System, was predicated upon the theory that “ [p]rior to retirement for superannuation the member’s rights are inchoate ”. The plaintiffs assert that it was this very theory that the constitutional amendment was designed to set at rest. We agree.
In Roddy v. Valentine (268 N. Y. 228 [1935]) this court held that where the statutory conditions for retirement from the .civil service have been met “ and the award of the pension or benefit has been made, or as of right should have been made * * * the interest becomes vested and takes on the attributes of a contract, which in the absence of statutory reservations, may not legally be diminished or otherwise adversely affected by subsequent legislation ” (p. 232). We pointed out, however, (p. 231) that “ [w]here the statutory scheme creates a fund wholly or largely out of public moneys, the interest of the member down to the point where there has been compliance with all precedent conditions and the award has been or as of right should have been made, can hardly be deemed contractual ’ ’ arid that1 ‘ whatever its legal nature may be, there seems to be no doubt that it is subject to change or even to revocation at the will of the Legislature.” Thereafter, in 1938, section 7 of article Y of the New York State Constitution was adopted by the Constitutional Convention and approved by the people. It reads: ‘ ‘ After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.”
It seems clear that the foregoing constitutional provision was designed to overcome the dictum in the Roddy case {supra) to the effect that prior to retirement, pension and retirement systems of the State or of a civil division thereof, created wholly or largely out of public moneys, were subject to the. will of the Legislature. By the constitutional amendment the people determined to confer contractual protection upon the benefits of pension and retirement systems of the State and of the civil *9 divisions thereof, and to prohibit their diminution or impairment prior to retirement. As this court said in Matter of Day v. Mruk (307 N. Y. 349, 354): “ [A]fter such effective date [that of the constitutional amendment] such systems were no longer gratuitous, but by virtue of the new amendment became contracts and the members of pension systems thereby acquired vested interests which could not thereafter be diminished or impaired. Excerpts from the proceedings of the Convention appear to bear out this conclusion. ’ ’
Thus, prior to the constitutional amendment, it was retirement that fixed the rights of the employee. The purpose of the amendment was to fix the rights of the employee at the time he became a member of the system. Obviously when an employee retires from public service it is the money payments he receives from either a pension or retirement system that is the principal if not the sole benefit the system affords him. At the time the employee joins the system he is able to look forward to a pension or retirement allowance when his service is over. That reward or benefit is part of the compensation which he accepts in lieu of the greater rewards of private employment. The adoption of a mortality table which reduces, by approximately 5%, the amount of the money payments he will receive from the Retirement System, as the January 9, 1946 table does, certainly effects a diminution and an impairment of the benefits of the Retirement System.
The defendant State Teachers Retirement System concedes that section 7 of article V of the Constitution endows membership in the various retirement systems of the State and its civil divisions, including the New York State Teachers Retirement System, with the attributes of a contractual relationship. Its contention is that the applicable provisions of the statutes in force at the time membership in the Retirement System is acquired must be read into the contract; that the provisions of subdivisions 4 and 5 of section 508 of the Education Law were in force at the time section 7 of article V of the Constitution became effective and that such provisions contemplate (1) a periodic review by the State Teachers Retirement System of the mortality tables being used to compute annuities, (2) the adoption of new mortality tables, and (3) the use of the new mortality tables in the computation of the annuities of all per *10 sons thereafter retiring. In other words, the defendant argues that the constitutional amendment did no more than transform into a contract all the provisions of the Education Law as they stood on July 1, 1940, including the claimed right of the defendant to adopt a mortality table that reduces the payments to teachers then in the system. If the defendant be correct, not only will the teachers suffer impairment of their benefits to the extent of the approximately 5% called for by the mortality table of January 9, 1946, but, in addition, they will continue to be exposed to the vicissitudes of actuarial experience in the future, and the defendants will be free to reduce still further the annuities of teachers by the adoption of another mortality table. The constitutional amendment was adopted to prevent just such a situation from existing. What is more, it does not appear that the Education Law bestows upon the defendant the right to adopt a mortality table which reduces the payments to teachers already in the system. Subdivisions 4 and 5 of section 508 of the Education Law read as follows:
“4. The retirement board shall provide for maintenance of an individual account with each member showing the amount of the member’s contributions and the interest accumulations thereon. It shall collect and keep in convenient form such data as shall be necessary for the preparation of the required mortality and service tables, and for the compilation of such other information as shall be required for the actuarial valuation of the assets and liabilities of the various funds created by this article. Upon the basis of the mortality and service experience of the members and beneficiaries of the system, the retirement board from time to time shall adopt the tables to be used for valuation purposes and for determining the amount of annuities to be allowed on the basis of the contributions of members.
“5. At such times as the retirement board may deem it necessary and at least once each quinquennial period, the retirement board shall have prepared by a competent actuary familiar with retirement systems, a report showing a complete valuation of the present and prospective assets and liabilities of the various funds created by this article with the exception of the expense fund. The actuary shall make an investigation of the mortality and service experience of the members of the retirement system and shall report fully upon its conditions with *11 such recommendations as he shall deem advisable for the information of the retirement board in the proper operation of the retirement system.”
While it is clear that section 508 contemplates a periodic review of the mortality tables to be used in determining the amounts of annuities to be allowed on the basis of the contributions of members, the section nowhere declares that mortality tables adopted after a person has become a member of the system are to be employed in determining the annuity benefits to which such person is entitled upon retirement. Nor do we see that we should read such an intention into the statute. The constitutional amendment, as demonstrated above, prohibits official action during a public employment membership in a retirement system which adversely affects the amount of the retirement benefits payable to the members on retirement under laws and conditions existing at the time of his entrance into retirement system membership. If we are to construe section 508 of the Education Law as authorizing that which the Constitution prohibits, then, the statute must be held to have been superseded by the constitutional amendment. It seems to us that there is no necessity for so holding since it is reasonable to construe the Education Law as authorizing (1) a periodic review by the State Teachers Retirement System of the mortality tables being used to compute annuities, (2) the adoption of new mortality tables, and (3) the use of the new mortality tables in the computation of the annuities of only such persons as enter the system thereafter.
Defendant argues that if this court holds that new mortality tables adopted by the Retirement System are applicable only to those persons who joined the system subsequent to the date of such adoption, the system will be plunged into bankruptcy. The answer to that argument must be that if the people intended to decree, by the constitutional amendment, that mortality tables adopted by the system after one has become a member are not to be applied in the computation of the annuity of such person, we are not at liberty to hold otherwise simply because the system may become bankrupt as a result. It is clear, however, that the people were cognizant of the possible financial difficulties in which the State and its civil divisions having retirement systems might find themselves unless they were given *12 an opportunity, prior to the effective date of the amendment, to review their retirement systems and to adjust, modify or supplement the provisions thereof so as to avoid bankruptcy. As we said in Matter of Bay v. Mruk (307 N. Y. 349, 354, supra): “ Section 7 of article V was added to the Constitution of the State of New York in 1938. The amendment took effect except as otherwise provided on January 1, 1939 (art. XX, § 1). The effective date of section 7 of article Y was postponed for one and one-half years, however, until July 1, 1940, presumably to enable the State and its civil divisions to review their pension systems and to adjust, amend, modify or supplement the provisions of existing systems in the light of the fact that after such effective date such systems were no longer gratuitous, but by virtue of the new amendment became contracts and the members of pension systems thereby acquired vested interests which could not thereafter be diminished or impaired.” The defendant, instead of taking any action during the one and one-half year period before the amendment became effective, delayed action until January 9, 1946, over five and one-half years after the amendment became effective and over seven years after it had been approved by the people at the General Election of 1938. If bankruptcy now threatens to overtake the Teachers Retirement System, the system must turn to the Legislature for financial assistance. It may not ask us to ignore the will of the people as expressed in their Constitution.
The judgment of the Appellate Division should be reversed, with costs in all courts, and the matter remitted to. Special Term for the entry of a declaratory judgment in favor of the plaintiffs.