**Harold ROBBINS, Plaintiff,**

v.

**POLICE PENSION FUND, Article 11, Inc., the City of New York and Police Commissioner Michael P. Murphy, Defendants.**

**No. 68 Civ. 3811.**

United States District Court,
S. D. New York.

Dec. 8, 1970.

**94**

Robert D. Gould, New York City, for plaintiff.

J. Lee Rankin, Corp. Counsel, New York City, for defendants; Yevette Harmon, New York City, of counsel.

## OPINION

COOPER, District Judge.

Plaintiff moves and defendants cross-move for summary judgment pursuant to Rule 56, F.R.Civ.P. Finding no triable issues of fact, we deny plaintiff's motion and grant defendants' motion.

Plaintiff was a Lieutenant in the New York City Police Department with more than twenty (20) years of service credit when he was dismissed on March 5, 1963 from the force by the Police Commissioner.[1]

On March 3, 1962, a suspect was arrested for a felonious assault against his wife, forgery, bigamy, and illegal entry into the United States. Plaintiff was then assigned as desk officer in command of the 108th Precinct stationhouse where the suspect was being held. The prisoner escaped custody that evening and plaintiff was held accountable. Following a departmental hearing, the trial commissioner of the Police Department (so designated by its Police Commissioner) found plaintiff before us guilty on thirteen (13) charges and specifications, and recommended that he be suspended for thirty (30) days and placed on probation for one (1) year. The Police Commissioner did not follow the recommendation and dismissed plaintiff from the force March 5, 1963.[2]

---

1. Plaintiff's appointment on December 12, 1945 was made retroactive to November 21, 1942 on account of military service. He was promoted to Sergeant on January 1, 1950 and to Lieutenant on June 16, 1952. At the time of his dismissal he was on the eligible list for appointment to Captain.

2. "§ 434a–14.0 *Discipline of Members*—

a. The commissioner shall have power, in his discretion, on conviction by him, or by any court or officer of competent jurisdiction, of a member of the force of any criminal offense, or neglect of duty, violation of rules, or neglect or disobedience of orders, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct or conduct unbecoming an officer, or any breach of discipline, to punish the offending party by reprimand, forfeiting and withholding pay for a specified time, suspension, without pay during such suspension, or by dismissal from the force; but no more than thirty days' salary shall be forfeited or deducted for any offense. All such forfeitures shall be paid forthwith into the police pension fund.

b. Members of the force, except as elsewhere provided herein, shall be fined, reprimanded, removed, supended or dismissed from the force only on written charges made or preferred against them, after such charges have been examined,

Plaintiff commenced an Article 78 proceeding June 20, 1963, in the New York State Supreme Court, New York County, to review the discretion underlying the administrative decision which resulted in his dismissal. The matter in due course was transferred to the Appellate Division, First Department, on February 20, 1963. The Appellate Division unanimously affirmed the determination of the Police Commissioner. 24 A.D.2d 933, 264 N.Y.S.2d 211 (1st Dept. 1965), motion for leave to appeal denied, 17 N.Y.2d 423, 270 N.Y.S.2d 1026, 217 N.E.2d 41 (N.Y.C.A.1966).

■ Plaintiff now contends, in the main, that the resulting loss of pension rights accompanying his dismissal is a denial of due process of law in violation of the United States Constitution, Amendment XIV; an impairment or diminishment of his contractual rights in violation of New York State Constitution, Article 5 § 7; and cruel and unusual punishment under United States Constitution, Amendment VIII. Jurisdiction is based upon 28 U.S.C. § 1331.[3]

*As to res judicata*

■ At the outset, defendants claim that the judgment of the Appellate Division is *res judicata* in this proceeding. The general rule is that a state law or federal constitutional question is *res judicata* in a subsequent federal court action where the parties and subject matter are the same. Resolute Insurance Company v. State of North Carolina, 276 F.Supp. 660 (E.D.N.C.1967); Olson v. Board of Ed. of U. Free Sch. Dist. No. 12, Malverne, N. Y., 250 F.Supp. 1000, 1004, n. 8 (E.D.N.Y.1966).

■ Strict identity of parties is not required. Plaintiff has had his day in court and if it were otherwise permissible defendants could defensively use the prior judgment which was adverse to plaintiff. B. R. DeWitt, Inc. v. Hall, 19 N.Y.2d 141, 278 N.Y.S.2d 596, 225 N.E.2d 195 (N.Y.C.A.1967).

In addition, plaintiff's failure to raise constitutional issues in the state court Article 78 proceeding does not by itself preserve the right to enter a federal court at a later date upon the same facts, alleging the same wrong and seeking the

heard and investigated by the commissioner, one of his deputies or the assistant to the commissioner, upon such reasonable notice to the member or members charged, and in such manner or procedure, practice, examination and investigation as such commissioner may, by rules and regulations, from time to time prescribe. (Subd. b as amended by L.L.1955, No. 30, May 6.)

c. The commissioner is also authorized and empowered in his discretion, to deduct and withhold salary from any member or members of the force, for or on account of absence for any cause without leave, lost time, sickness or other disability, physical or mental; provided, however, that the salary so deducted and withheld shall not, except in case of absence without leave, exceed one-half thereof for the period of such absence; and provided, further, that not more than one-half pay for three days shall be deducted on account of absence caused by sickness. (Par. c as amended by L.L.1940, No. 6, February 13.)

d. Upon having found a member of the force guilty of the charges preferred against him, either upon his plea of guilty or after trial, the commissioner or the deputy examining, hearing and investigating the charges, in his discretion, may suspend judgment and place the member of the force so found guilty upon probation, for a period not exceeding one year; and the commissioner may impose punishment at any time during such period. (Administrative Code of City of New York, enacted by Chapter 929, Laws of 1937, eff. January 1, 1938)."

The Police Commissioner, in accordance with the recommendation of the trial commissioner, dismissed an attending patrolman following a finding of guilt on eighteen (18) charges and specifications also arising from the same incident.

3. As the constitutional issues presented do not turn on unsettled questions of state law which might modify those issues or on predominately local factors, abstention is inappropriate. Tomiyasu v. Golden, 358 F.2d 651 (9th Cir. 1966). State administrative remedies being exhausted, we will not now require further state judicial proceedings. Wright, Law of Federal Courts (1969), ¶49 at 162.

same recovery, simply because a new theory of relief based upon the Constitution is presented. Tomiyasu v. Golden, 358 F.2d 651 (9th Cir. 1966).

■ In furtherance of the *res judicata* rationale which favors efficient use of judicial resources, a judgment may be *res judicata* for matters actually presented as well as those which could have been presented. Grubb v. Public Utilities Commission of Ohio, 281 U.S. 470, 50 S.Ct. 374, 74 L.Ed. 972 (1930); Pray v. Hegeman, 98 N.Y. 351 (C.A.N.Y. 1885).

■■ The issue therefore is whether plaintiff could have raised his constitutional objections in the Article 78 proceeding. Under New York law, a party cannot in a single proceeding rely upon a statute or retain benefits thereunder and also attack its constitutionality. The proper procedure would be to raise the constitutional issue in a separate declaratory judgment action. Diocese of Rochester v. Planning Board of Town of Brighton, 1 N.Y.2d 508, 154 N.Y.S.2d 849, 136 N.E.2d 827 (C.A.N.Y.1956); 8 Weinstein-Korn-Miller, New York Civil Practice, ¶ 7801.02[4], n. 10.[4]

With over twenty (20) years of service, plaintiff could have elected retirement and received his pension benefits[5]

if he seasonably applied for retirement before dismissal or forfeiture of his right to apply for a pension:

§ B18–40.0 *Retirement; minimum age or period for service retirement.—*

Any member in city-service who shall have attained the minimum age or period of service retirement elected by him upon his own written application to and filed with the board setting forth at what time, not less than thirty days subsequent to the execution and filing thereof, he desires to be retired, shall be retired as of the date specified in said application, provided that at the time so specified for his retirement, his term of tenure of office, or employment shall not have terminated or have been forfeited, provided further that upon his request in writing the member shall be granted a leave of absence from the date of filing said application until the date of retirement becomes effective. (Administrative Code of City of New York, as added by L.L. 1940, No. 2, March 29; as amended by L.L.1951, No. 45, May 7.).[6]

Plaintiff chose[7] instead to submit to the discretion of the Police Commissioner in an effort to retain his position and right to pension. He thereby relied upon and sought to obtain benefits under the statutes relating to discipline of members (§ 434a–14.0 n. 2, supra) and the ac-

4. A "due process" claim of abuse of discretion attacking a decision, not an underlying statute, is cognizable in an Article 78 proceeding. See Diocese of Rochester and Weinstein-Korn-Miller, supra.

5. § B18–41.0 *Retirement; selection of either twenty or twenty-five years of city-service.—*

a. Any person becoming a member who was not previously a member or who during his last previous membership in the pension fund contributed on the basis of a minimum period of retirement of twenty years of city-service, may elect, prior to the certification of his rate of contribution, to contribute on the basis of a minimum retirement period of twenty years of city-service, by a written election duly executed and acknowledged and filed with

the board. The minimum period of retirement for such member so electing shall be twenty years of city-service, and all contributions and benefits payable by or on account of any such member shall be computed on the basis of such minimum retirement period.

6. Although plaintiff suggests otherwise, this Court is not the proper forum to examine the wisdom of allegedly effectively granting pensions under this regulation through delays by actual or potential participants in Police Department disciplinary proceedings. Plaintiff's affidavit, pp. 6–7.

7. Plaintiff's memorandum of law, p. 6. There is no allegation that plaintiff was unaware of the possible option; plaintiff concedes making the choice.

companying provisions affecting his anticipated future retirement (§ B18–41.0, n. 5, supra and § B18–40.0, text, supra).

■ Consequently, under the New York rule plaintiff could not have attacked in the Article 78 proceeding the constitutionality of the statutes on which he relied and sought benefits.

Accordingly, the state court judgment cannot be given binding and conclusive *res judicata* effect in this court.[8]

### Plaintiff's constitutional claims

Even though the state court judgment is not *res judicata* we find against plaintiff on his constitutional claims.

■ Plaintiff contends that § B18–40.0, supra, violates his rights under United States Constitution, Amendment XIV, Section 1.

" * * * nor shall any state deprive any person of life, liberty, or property, without due process of law."

which includes his vested property and contractual rights pursuant to New York State Constitution, Article 5, § 7.

"After July first, nineteen hundred forty, membership in any pension or retirement system of the state or civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired."

If vested pension rights inured to plaintiff under his contract, these could not be arbitrarily denied by the Police Commissioner.

[T]he members of the retirement system are entitled to certain rights, which rights have been characterized as being in the nature of contractual or quasi—contractual rights. Where the statutory conditions for retirement have been met those rights become vested and payment of the pension cannot be withheld in the absence of fault or delinquency at the mere whim of any administrative officer or body (citations omitted).

Matter of Eberle v. LaGuardia, 285 N.Y. 247, 251, 33 N.E.2d 692, 693 (1941)

However, plaintiff did not have a vested right to a pension. Under § B18–41.0 and § B18–40.0, plaintiff was required to complete twenty (20) years of service (concerning which there is no contest) and be a member of the Police Department without termination or forfeiture of his tenure of office at the time he applied for his pension. Plaintiff did not meet this second requirement. *Eberle*, supra, at 252, 33 N.E.2d 692. These two requirements existed when plaintiff began his service. At the time he became a member of the Police Department and made his first payment into the retirement system, it was foreseeable that he would not be entitled to his pension unless he met the requirements of the pension, only one of which was being a member of the force at the time he filed for retirement. These requirements did not suddenly spring into existence after he began police service, defeating the reasonable expectations which one might entertain and weigh in a careful consideration of the constellation of values upon commencing a career.

The elements of surprise and fundamental unfairness, entailed when a party unilaterally undertakes to modify the terms of a contract, are crucial factors underlying the prohibitions of New York State Constitution, Article 5, § 7 against diminishing or impairing the benefits of membership in a state pension or retirement system. In the instant case, no rights or conditions of plaintiff's contract present and accepted by him at the time he began service were diminished or impaired. His failure to meet a condition precedent to his right to a pension did not result in a diminishing or im-

---

8. The instant case is distinguishable from the situation presented in Taylor v. New York City Transit Authority, 433 F.2d 665 (2d Cir. 1970), where petitioner proceeded under New York Civil Service Law § 76 (not Article 78 of the New York Civil Practice Law and Rules). There the rule preventing simultaneous reliance and constitutional attack on a regulation or statute was not at issue. See p. 668.

pairing of his inchoate pension right which existed all along but did not come to fruition until that condition was met.

This is to be distinguished from the situation in Birnbaum v. New York State Teachers Retirement System, 5 N.Y.2d 1, 176 N.Y.S.2d 984, 152 N.E.2d 241 (C.A.N.Y.1958). In *Birnbaum*, the New York Court of Appeals held Article 5, § 7 prohibited the New York State Retirement System from adopting new mortality tables effectively reducing the pensions of those who were members of the system before the enactment of Article 5, § 7 but who became eligible for retirement after the enactment. The Court stated that the rights of a person become vested at the time he joined the system (not as in the instant case, the right to a pension upon completion of minimum service time and filing while employed) and could not be impaired subsequently by the Legislature:

> Prior to the constitutional amendment, it was retirement that fixed the rights of the employee. The purpose of the amendment was to fix the rights of the employee at the time he became a member of the system. Obviously when an employee retires from public service it is the money payments he receives from either a pension or retirement system that is the principal if not the sole benefit the system affords him. At the time the employee joins the system he is able to look forward to a pension or retirement allowance when his service is over. That reward or benefit is part of the compensation which he accepts in lieu of the greater rewards of private employment. The adoption of a mortality table which reduces, by approximately 5%, the amount of the money payments he will receive from the Retirement System, as the January 9, 1946 table does, certainly effects a diminution and an impairment of the benefits of the Retirement System (176 N.Y.S. 2d at 988, 152 N.E.2d at 245).

Implicit in *Birnbaum* is that an employee complete service in good standing, and that at the time of commencing employment he be aware of his rights, with both parties bound thereby (consistent with our analysis of plaintiff's argument).

## The nature of this pension

The pension which plaintiff seeks is not a simple annuity. While it has elements of compensation, § B18–40.0 and § B18–41.0 expressly declare a clear public policy to all who consider entering into public service: The rewards of a pension are given only for faithful and long-term service, with improper behavior being as serious after twenty (20) years of service as at any time before.

A contrary rule would ignore malfeasance resulting in dismissal. It would mean that those who had served the minimum period for retirement and had reached the highest positions of public trust, responsibility, and sensitivity—those who should be most careful to avoid improper behavior which could jeopardize their pensions—would be the *least* responsive because their prior service would guarantee a pension regardless of their subsequent improper or unfaithful conduct. For those with substantial length of service to their credit, dismissal and loss of salary might well be regarded a minor sanction if the pension nevertheless were guaranteed. Such a system of false values could foster rather than discourage corruption, purposely overlook the use of excessive force and condone other improper activities carried out under color of law. We are convinced the entire "force" including the rank and file of the department would not have it so.

The distinct nature of a policeman's work, its close relation to fundamental public safety, the emergent and unpredictable nature of the task of preserving the essential order of the community, would require forbidding constitutional language to deprive local government of the pertinent legislative power to deal freely with the conditions of this kind of employment. Gorman v. City of New York, 280 App.Div. 39, 46, 110 N.Y.S.2d 711 (1st Dept., 1952), aff'd

304 N.Y. 865, 109 N.E.2d 881 (1952), motion to amend remittur granted, 304 N.Y. 973, 110 N.E.2d 895 (1953), defendant's motion to dismiss granted, 345 U.S. 962, 73 S.Ct. 950, 97 L.Ed. 1381 (1953). Municipalities may promulgate reasonable methods of regulating police conduct, and in the case at bar public regulation may interpose itself to alter the method of conditions in respect to the enforcement of contractual rights without impairing, in the constitutional sense, the obligation of the contract. Conley v. Barton, 260 U.S. 677, 43 S.Ct. 238, 67 L.Ed. 456, cited in *Gorman,* supra, at 45.

Plaintiff's property and contractual rights, we hold, have not been violated under either United States Constitution, Amendment XIV, Section 1, or New York State Constitution Article 5 § 7.

 Plaintiff also urges that his loss of pension upon dismissal was a cruel and unusual punishment inflicted in violation of United States Constitution, Amendment VIII.

While plaintiff incurred a detriment as the result of his loss of pension, even a severe detriment is not necessarily a cruel and unusual punishment. As plaintiff is entitled to receive back any contributions which he made to the Retirement System § B3–29.0, Administrative Code of City of New York (enacted by Chapter 929, Laws of 1937, eff. January 1, 1938); *Eberle, supra,* 285 N.Y. at 254, 33 N.E.2d 692, the loss of pension under § B14–40.0 does not amount to the "inhuman, barbarous or tortuous punishment" envisioned by the Eighth Amendment. Black v. United States, 269 F.2d 38, 43 (9th Cir. 1959), cert. denied 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357; Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1909).

The Eighth Amendment has traditionally been applied to punishments imposed for the violations of criminal statutes.

Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968). Laws are considered nonpenal if they impose "a disability, not to punish, but to accomplish some other legitimate governmental purpose." Trop v. Dulles, 356 U.S. 86, 96, 78 S.Ct. 590, 596, 2 L.Ed.2d 603 (1968). As the purpose of the New York City statute providing for pension requirements is to induce long and faithful service, the statute is not penal and does not violate the Eighth Amendment.[9] See, e. g., United States v. Stangland, 242 F.2d 843 (7th Cir. 1957).

We find plaintiff's other arguments insubstantial.

So ordered.

---

9. Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967) and Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) dealing with Fifth Amendment protections in disciplinary proceedings are not here applicable.