**Charles RUSSO, Plaintiff,**

v.

**Douglas WHITE, as Personnel Director of the City of New York, and the Department of Personnel of the City of New York; Lee P. Brown, Police Commissioner, and as Chairman of the Board of Trustees of the Police Pension Fund, Article II; Police Pension Fund, Article II; the City of New York; and the Police Department of the City of New York, Defendants.**

**No. 90 Civ. 3715 (RWS).**

United States District Court, S.D. New York.

Oct. 8, 1991.

Dienst & Serrins, New York City, for plaintiff (Richard A. Dienst, of counsel).

Victor A. Kovner, Corp. Counsel, New York City, for defendants (Julie O'Neill and Frances Sands, of counsel).

## OPINION

SWEET, District Judge.

Plaintiff Charles Russo ("Russo") brought this action against defendants Douglas White ("White"), the Department of Personnel of the City of New York ("Personnel"), Police Commissioner Lee P. Brown ("Commissioner Brown"), the Police Pension Fund ("PPF"), the City of New York ("City") and the Police Department of the City of New York ("Police Department") (collectively "Defendants") seeking monetary and injunctive relief for (1) Defendants' alleged deprivations of his rights under the due process and equal protection clauses of the fourteenth amendment, and under the first, fourth, fifth, and sixth

amendments in violation of 42 U.S.C. § 1983; (2) Defendants' alleged violation of 42 U.S.C. § 1985; (3) Defendants' alleged deprivation of his rights under the due process and equal protection clauses of the New York State Constitution; and (4) Defendants' alleged violation of the New York Human Rights Law.[1] Defendants have brought the present motion for an order granting them judgment on the pleadings pursuant to Rule 12(c), Fed. R.Civ.P. or granting them summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the following reasons, Defendants' motion for summary judgment is granted.

*The Parties*

Russo, a resident of Nassau County, New York, is a retired police officer of the Police Department.

White is Personnel Director of the City of New York. Brown is the New York City Police Commissioner and Chairman of the Board of Trustees of the PPF.

*Prior Proceedings*

Russo commenced this action on May 31, 1990. The present motion was filed on April 30, 1991. Oral argument was heard, and the motion and supporting papers were considered fully submitted on July 18, 1991.

*The Facts*

Russo was appointed a police officer with the Police Department on September 15, 1969. Following his appointment, Russo elected a twenty-year retirement selection with an effective retirement date of September 15, 1989. He was promoted to the rank of sergeant in 1983.

In June of 1988, Russo took the civil service promotional examination for the rank of lieutenant (the "June Examination"). Due to the pendency of litigation surrounding the June Examination, however, Personnel was unable to promulgate a list of eligible candidates when, in April of 1989, the Police Department experienced a severe shortage of officers holding the rank of lieutenant. At that time, there were approximately 300 vacancies in that

rank. Therefore, in April of 1989, the Police Department obtained mayoral approval to appoint provisionally 250 lieutenants to fill the gap in the rank of lieutenant pending the promulgation of a civil service list for that rank.

The Police Department developed a list of prospective provisional appointees by using the available raw scores of the promotional candidates on the June Examination.

On May 30, 1989, the Police Department finalized its list of prospective candidates for provisional appointment, and the Personnel Orders Section directed that the appointees be notified that the promotion ceremony would be held on June 1, 1989 and that they were to report to the Police Academy on June 2, 1989 to begin a one-week orientation. Russo was one of the officers selected for provisional appointment to the rank of lieutenant.

Meanwhile, before learning of the possibility of provisional appointment to lieutenant, Russo had requested permission in February of 1989 to use all of his vacation days, starting in May of 1989 and ending in July of 1989. Furthermore, on May 15, 1989, Russo applied for sixty-six days of terminal leave to commence on July 12, 1989, the day immediately following his last scheduled vacation day, and to end September 15, 1989. Terminal leave is the term used to describe the paid vacation days granted to a retiring employee. The last day of Russo's terminal leave was the effective date of his retirement. On May 15, 1989, Russo also returned all of his police property, including his weapons, to the Police Department.

On May 27, 1989, Russo began his vacation, which was scheduled to end on July 11, 1989, the day before his terminal leave was scheduled to commence.

Since Russo was on vacation on May 30, 1989 when the Police Department finalized its list of candidates for provisional appointment, Police Department personnel contacted him at home to advise him of his

---

1. The complaint also alleges a cause of action under 42 U.S.C. § 1981. Russo has withdrawn this claim. *See* Plaintiff's Statement Pursuant to Rule 3(g) at 2, ¶ 3.

impending appointment and of the promotion ceremony on June 1, 1989.

On June 1, 1989, Russo attended the promotion ceremony. On the same day, he received written orders advising that he had been transferred from the 101st Precinct in Queens to the 41st precinct in the Bronx and instructing him to report to the Police Academy on June 2, 1989 to begin a one-week orientation. Russo was issued a new identification card and police shield.

Russo neither attended the orientation nor reported to his new assignment. Russo claims, but has not substantiated, that a police sergeant told him that he could continue his vacation and attend the Police Academy upon returning from vacation. On June 5, 1989, he filed his pension application with the Police Department Pension Section.

On June 5, 1989, staff members from the Employee Management Division ("EMD") of Personnel were dispatched to the Police Academy to distribute packets of personnel forms that each provisional appointee was required to complete. While at the Police Academy, they discovered that Russo and five other officers had not attended the orientation.

A subsequent investigation revealed that the five absent officers were on vacation. The investigation also resulted in the discovery that (1) Russo had applied for terminal leave and returned all of his police property on May 15, 1989 and (2) that he had commenced his final vacation/terminal leave on May 27, 1989. Through the investigation, Personnel also learned that Russo had filed his pension application on June 5, 1989 and that it had been endorsed and approved by the Pension Section.

When it came to her attention on June 12, 1989 that Russo had commenced retirement and would not be available to serve in his provisional position, Helen R. Tanzosh ("Tanzosh"), Director of the EMD, recommended that Russo's provisional appointment be rescinded and that Sergeant Jan P. Leicht ("Leicht") be appointed to fill the vacancy. On the same day, Commissioner Brown approved Tanzosh's recommendation.

On June 13, 1989, to avoid abuse of provisional status, the Department established a requirement that all candidates being considered for provisional appointments be queried concerning their availability and denied provisional appointments unless they acknowledged their availability for training and service in the respective position for a minimum of one year.

By Personnel Order No. 189 dated June 15, 1989, Russo's provisional appointment was rescinded, and he was returned to the rank of sergeant.

In mid-June 1989, Russo contacted the EMD Executive Officer concerning the revocation of his provisional appointment. He was informed that if he was still interested in becoming a lieutenant, he could withdraw his retirement papers, return to the Police Department, and wait for Personnel to promulgate the civil service list of those eligible for permanent appointments to the rank of lieutenant.

The complaint alleges that Russo reconsidered his retirement and decided to remain with the Police Department and to take an upcoming promotional test for the rank of captain. However, Russo did not in fact withdraw his retirement papers but rather continued his vacation and terminal leave.

Following the completion of his terminal leave, Russo retired from the Police Department on September 18, 1989.

On October 31, 1989, the Police Department Pension Section commenced partial payment of Russo's pension benefits based on the then-effective lieutenant's salary. The Pension Section did not adjust Russo's partial payments to reflect that he had been returned to the rank of sergeant because it was anticipated that the settlement in pending negotiations over the sergeant's contract would result in greater pension benefits than those Russo was receiving as a newly appointed provisional lieutenant. Since contract negotiations have been completed, upon the finalization of his pension, Russo will receive approximately $2607 per month to correspond to his salary as a sergeant on the date of his retirement, with

adjustments to reflect the salary rates prescribed in the new contract for the date of his retirement.

Police Department records show that, of the 1,364 officers provisionally appointed to various ranks within the last five years, fifteen officers, not including Russo, retired with their provisional titles. All of the officers who retired with their provisional titles were aged forty and above. Of the fifteen, one retired because of an accidental disability and ten retired after serving approximately six to fifteen months in their provisional titles. The four remaining officers, including two who were also provisionally appointed to the rank of lieutenant on June 1, 1989, retired within approximately four months after their provisional appointments. Each of those officers attended the Police Academy orientation, completed the required paperwork, and reported to their new assignments. Because its normal procedure is not to inquire into the status of provisional appointees after they have completed the required paperwork, the EMD was not aware that those officers would retire soon after receiving their provisional appointments.

*Discussion*

Russo claims (1) that he was demoted and denied pension benefits commensurate with the rank of lieutenant without due process and equal protection of the law and was deprived of his rights under the First, Fourth, Fifth and Sixth Amendments, in violation of 42 U.S.C. § 1983; (2) that Defendants conspired to deprive him of his pension rights in violation of 42 U.S.C. § 1985; (3) that by unlawfully demoting him, Defendants violated the due process and equal protection clauses of the New York State Constitution; and (4) that Defendants discriminated against him on the basis of age in violation of New York Human Rights Law § 296. Defendants have moved to dismiss these claims.

### 1. *The Standard for Summary Judgment*

Defendants have moved for both judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. and summary judgment pursuant to Rule 56, Fed.R.Civ.P. Inasmuch as the parties have submitted materials outside the pleadings along with their motion papers, Defendants' motion will be treated solely as one for summary judgment. *See* Rule 12(b), (c), Fed.R.Civ.P.

The standards for summary judgment are well-known. The court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is warranted only if "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. In order to create a genuine factual issue, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). This is particularly true for those issues on which the non-moving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of fact exists, the court must draw all permissible inferences in favor of the nonmoving party. *Branum v. Clark,* 927 F.2d 698 (2d Cir.1991).

### 2. *Claims under 42 U.S.C. § 1983*

Russo's first claim is that Defendants deprived him of his constitutional right to a pension commensurate with the rank of lieutenant without due process and equal protection of the law in violation of 42 U.S.C. § 1983 ("§ 1983"). He also claims that Defendants deprived him of his rights under the First, Fourth, Fifth and Sixth Amendments.

To prevail on his constitutional claims under § 1983, Russo must establish that: (1) the allegedly unlawful conduct was committed by a person acting under color of state law and (2) that conduct deprived him of "rights, privileges or immunities secured by the Constitution or laws of the United States." *Oberlander v. Perales,* 740 F.2d

116, 119 (2d Cir.1984). Because Russo's demotion and denial of a lieutenant's pension were indisputably effected by persons acting under color of state law, it is necessary only to examine whether Russo has raised material facts that create a genuine factual issue as to whether these acts amounted to a deprivation forbidden by § 1983.

*Due Process Claim*

■ A due process analysis consists of two steps. The first question is whether the plaintiff has a property or liberty interest protected by the Constitution. *Narumanchi v. Board of Trustees*, 850 F.2d 70, 72 (2d Cir.1988). If a protected interest is identified, the second step is to determine whether the defendant deprived the plaintiff of that interest without due process. *Id.* This second step thus asks what process was due plaintiff, and inquires whether that constitutional minimum was provided. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

■ At the outset, it is worthwhile to state that the issue is *not*, as Russo's papers suggest, the constitutionality of a government's termination of or failure to provide a pension to one of its employees without due process.[2] It is undisputed that Russo received, and continues to receive, a pension. The question before this court *is*, however, whether Russo's position as a provisional lieutenant was a constitutionally protected interest and thus whether he may not be deprived of a lieutenant's pension without due process of law.

Russo claims that his provisional appointment to the rank of lieutenant "entitles" him to pension benefits based on that rank. Under *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. at 2709. To determine whether Russo had a property interest in the rank of provisional lieutenant giving rise to such an entitlement,[3] it is necessary to consult "existing rules or understandings that stem from an independent source such as state law." *Id.; Oberlander*, 740 F.2d at 120 (citing *Roth*).

It is well settled under the law of the State of New York that as a provisional employee, Russo had no expectation of tenure and therefore no property interest in his provisional position. *See Castro v. New York City Dept. of Educ.*, 1990 U.S.Dist. Lexis 7381 (S.D.N.Y. June 15, 1990) (citing New York cases); *Sharp v. Emergency Med. Serv.*, 1989 WL 82414, 1989 U.S.Dist. Lexis 8279 (S.D.N.Y. July 20, 1989) (same); *Preddice v. Callanan*, 69 N.Y.2d 812, 813, 513 N.Y.S.2d 958, 959, 506 N.E.2d 529, 530 (1987). Provisional appointment is a temporary status, a "mere stop-gap exception[ ] of necessity," *Koso v. Greene*, 260 N.Y. 491, 494, 184 N.E. 65 (1933), that carries no tenure rights. *Riggi v. Blessing*, 9 A.D.2d 423, 424–25, 195 N.Y.S.2d 971, 974 (3d Dept.1959), *aff'd*, 10 N.Y.2d 917, 223 N.Y.S.2d 871, 179 N.E.2d 711

**2.** Under the Fourteenth Amendment and New York law, the right to a government pension and continued payments thereunder is a property interest protected by due process guarantees, *see Weaver v. New York City Emps.' Retirement Sys.*, 717 F.Supp. 1039, 1043 (S.D.N.Y.1989) (citing *Basciano v. Herkimer*, 605 F.2d 605, 609 (2d Cir.1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979); *Balash v. New York City Emp. Retirement Sys.*, 34 N.Y.2d 654, 655–56, 355 N.Y.S.2d 577, 577, 311 N.E.2d 649, 649 (1974)). Furthermore, upon discontinuance, members of the police force who have completed fifteen years of service and filed a duly executed application, have a vested right to receive a deferred retirement allowance consist-

ing of an annuity and pension computed on the basis of "the annual earnable compensation on the date of his or her discontinuance of police service." N.Y.C.Admin. Code § 13–256(a)–(c).

**3.** Russo has not alleged that revoking his provisional appointment affected his reputation or any other liberty interest. Although the court therefore declines to address this question, *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), would seem to steer away from a finding that the demotion constituted such a deprivation. *See id.* at 348, 96 S.Ct. at 2079 (non-retention of tenured employee alone does not constitute deprivation of liberty interest).

(1961). Like "at will" employees, provisional employees have no property right to a hearing prior to termination or to reinstatement, back pay, or damages. *Preddice,* 69 N.Y.2d at 812, 513 N.Y.S.2d at 959, 506 N.E.2d at 530.

The only limitation on an employer's right to terminate or demote provisional employees is that the action must not be arbitrary or capricious. *Cardona v. Ward,* 673 F.Supp. 120, 122 (S.D.N.Y.1987) (citing *Talamo v. Murphy,* 38 N.Y.2d 637, 639, 382 N.Y.S.2d 3, 4, 345 N.E.2d 546, 547 (1976)). In New York, this restriction has been construed to mean that such employees may not be terminated for a constitutionally impermissible purpose or in violation of a statutory proscription or policy established by decisional law. *Id.*

Russo has failed to point to any constitutional or statutory provision or any decisional law violated by Defendants that would lead to a finding that their acts were arbitrary and capricious. The several sources of state law that he does suggest were violated are inapposite.

Russo begins by claiming that his demotion infringed his rights under Article V, § 7 of the New York State Constitution, which provides that:

> After July first, nineteen hundred forty, membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.

Pursuant to this constitutional mandate, New York courts have proscribed official action which adversely affects the amount of the retirement benefits payable to pension members. *See Birnbaum v. New York State Teachers Retirement Sys.,* 5 N.Y.2d 1, 11, 176 N.Y.S.2d 984, 152 N.E.2d 241 (1958). The purpose of Article V, § 7 is to fix the right of an employee at the time he becomes a pension plan member and to prohibit subsequent diminution or impairment of his pension benefits. *See id.* at 9, 176 N.Y.S.2d 984, 152 N.E.2d 241. New York courts have construed pension benefits as "compensation for services previously rendered for which full and adequate compensation was not received," *Giannettino v. McGoldrick,* 295 N.Y. 208, 212, 66 N.E.2d 57 (1946).

Russo's invocation of Article V, § 7 depends wholly on the erroneous assumption that he was entitled to constitutional protection of continuation in the rank of lieutenant. *See supra.* Again, it is noted that Russo's right to a lieutenant's pension is only a collateral issue; the real question is whether the demotion violated this constitutional provision. Focused in this way, Russo's situation falls outside of the ambit of Article V, § 7: Article V, § 7 does not prohibit demotion and its concomitant diminution in salary and therefore pension benefits.

Moreover, because Russo's provisional rank was rescinded before he rendered any services as a lieutenant, it cannot be said that he ever "be[came] a pension plan member" as a lieutenant.

Because Russo has presented no facts to show that his final pension will not reflect all the "compensation" to which he is entitled for his years of service, there is no genuine issue as to whether his demotion was arbitrary and capricious under Article V, § 7.

Russo next claims that Section 13–256(a) through (c) of the New York City Administrative Code establishes that he had a protected property interest in a lieutenant's pension. That section provides that members of the police force who have completed fifteen years, at least five of which immediately precede discontinuance, and who file a duly executed application, have a vested right to receive a deferred retirement allowance upon discontinuance. Subsection (c) provides that this deferred retirement allowance consists of an annuity and a pension computed on the basis of "the annual earnable compensation on the date of his or her discontinuance of police service."

Russo contends, therefore, that because he was a provisional lieutenant on June 5, 1989, when he submitted his pension appli-

cation, his right to a lieutenant's pension vested on that date.[4]

This interpretation, however, is plainly inconsistent with the language of § 13–256. By the time of Russo's "discontinuance" on September 18, 1989 when he completed his terminal leave and retired from the Department, his provisional appointment had already been rescinded and his rank restored to that of sergeant on June 15, 1989. *See* N.Y.C.Admin. Code § 13–214(22) (" 'Discontinued member.' A member who has discontinued police service. . . ."). Thus, under § 13–256, although his right to a pension did vest, it was a right to a sergeant's pension.

Finally, Russo claims that the defendants acted arbitrarily and capriciously because they "violated [New York Executive Law § 296(1)(a) ] by revoking [his] designation based on his age and more specifically his retirement status." Plaintiff's Memo in Opp. at 16. Nevertheless, he has failed to present any facts upon which Defendants could be found to have violated that statute.

Section 296(1)(a) provides that it is an unlawful discriminatory practice for an employer:

> because of the age . . . of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.Y.Exec. Law § 296(1)(a).

Russo has failed to make out even a prima facie case under the four-step analysis employed by New York courts in considering age discrimination claims under § 296. *See, e.g., Mayer v. Manton Cork Corp.*, 126 A.D.2d 526, 510 N.Y.S.2d 649, 650 (2d Dept.1987). Although he has demonstrated that he was a member of the protected class and that he was demoted and replaced by a person younger than himself, he has not shown that he was qualified for the rank of provisional lieutenant because he was not available to perform the duties of that position.

Even assuming, however, that his unavailability did not make him unqualified, Defendants have rebutted Russo's prima facie case by presenting a legitimate, non-discriminatory reason for rescinding his appointment. Defendants took this action upon discovering that Russo was in the process of retiring: the Police Department needed individuals who would actually perform the duties of provisional lieutenant, not simply collect the salary.

Russo has not produced any evidence to refute this rebuttal by showing that it is pretextual. Other officers of retirement age retained their provisional titles, and some, as Russo abundantly notes, retired with them.

*Equal Protection Claim*

■ Russo also claims that, in rescinding his provisional appointment, the Department singled him out for arbitrary treatment in violation of the equal protection clause of the Fourteenth Amendment. Specifically, he argues that Defendants violated his right to equal protection of the law because his:

> demotion based on the date of his retirement is an arbitrary distinction the City has created between an appointee who retires on the date of appointment and appointees who retire a day or a month or several months after the date of provisional appointment.[5]

---

**4.** On this issue, Russo apparently asks the court to regard the steps he took toward retiring as sufficiently final and binding that they caused his pension rights to vest when he *filed* for the pension. At the same time, Russo's equal protection argument, *see infra,* characterizes these steps as a much looser process that should be read not to have any effect until the date of his retirement. Russo's 3(g) statement provides that:

> Plaintiff's retirement was not to become effective for at least three months so that plaintiff

could have remained in service as a provisional Lieutenant. He also could have withdrawn his retirement papers so as to take a promotional examination for Captain.

Plaintiff's 3(g) at 2.

**5.** Russo has not challenged the Department's policy of screening provisional appointment candidates to ascertain whether they can train and serve for a minimum of one year as discriminatory on the basis of age. Even if he had, however, it is likely that the policy would with-

The equal protection clause of the fourteenth amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. This constitutional guarantee is "the right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). A municipal policy or practice that operates to the detriment of a distinct class of individuals is subject to examination under the limitations imposed on local government by the equal protection clause. *See New York City Transit Authority v. Beazer*, 440 U.S. 568, 587–88, 99 S.Ct. 1355, 1366–67, 59 L.Ed.2d 587 (1979).

Unless the challenged policy creates a classification that operates to disadvantage a suspect class or interferes with the exercise of a fundamental right, it will be examined under the rational relation test. *Murgia*, 427 U.S. at 312, 96 S.Ct. at 2566. Under that test, a policy will survive scrutiny if it is rationally related to a legitimate government interest.

Provisionally appointed officers discovered by the Police Department to have taken every step toward retirement short of actually retiring, before ever serving in the provisional title, do not constitute a suspect class under the equal protection clause. Moreover, as the Supreme Court has held, government employment *per se* is not a fundamental right. *Murgia*, 427 U.S. at 313, 96 S.Ct. at 2566. Therefore, the rational relation test is the appropriate standard for determining whether a genuine issue of fact exists to support Russo's claim.

The Police Department has a legitimate interest in expecting provisional appointees to serve in their provisional titles to prevent the appointment of provisional officers who never actually serve but merely collect a salary and benefits for that rank.

The Police Department's action with regard to Russo, and the policy prompting that action, was rationally related to its legitimate interest and not arbitrary, as Russo claims. Officers who have commenced retirement and are not available to perform the duties of their provisional titles, or who accept appointment only to retire within weeks of appointment, undermine the rationale for provisional appointment. While the principle behind the equal protection clause is that "the State must govern impartially" and that a government unit must not arbitrarily "adopt[ ] a rule that has a special impact on less than all the persons subject to its jurisdiction," *Beazer*, 440 U.S. at 587–88, 99 S.Ct. at 1367, "the Constitution does not require things which are different in fact ... to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940).

Russo has not pointed to any facts that would lead to a finding of arbitrariness. While he alleges that large numbers of provisional officers were "allowed" to retire within a short time of their provisional appointments who retained their provisional titles, in fact only four officers were in comparable, though importantly, not identical situations. As Defendants' affidavits provide, all four of these officers completed the paperwork required by Personnel and reported for training at the Police Academy. Thus, far from "allowing" them to retire with their provisional titles and concomitant benefits, the EMD never even discovered that they would soon retire. Russo's failure to comply with procedure, on the other hand, triggered an investigation

stand scrutiny under the rational relation test. That standard, and not strict scrutiny, would be appropriate because age is not a suspect classification under the equal protection clause, *see Gregory v. Ashcroft*, — U.S. —, 111 S.Ct. 2395, 2406, 115 L.Ed.2d 410 (1991); *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313–14, 96 S.Ct. 2562, 2566–67, 49 L.Ed.2d 520 (1976), and there is no fundamental right to government employment *per se*. *Murgia*, 427 U.S. at 313, 96 S.Ct. at 2566.

The purpose of provisional appointments is to fill vacancies in emergency situations. Where the shortage in officers of a given rank is such that this measure is necessary, the Police Department has a legitimate interest in ensuring that its emergency workforce will remain intact for a reasonable period of time. The reasonableness of the one year requirement is beyond the scope of this opinion.

that led to the discovery that he was in the process of retiring, and to the logical inference that he would be unavailable to perform the duties of lieutenant. Because four out of 1,364 provisional appointees slipped by the Department and retired with their provisional titles shortly after appointment, the Department's actions with respect to Russo are not established to be arbitrary. Russo has not presented the court with any evidence, for instance, that the Department allowed anyone else known to be in the process of retiring to retain their provisional titles.

*First, Fourth, Fifth and Sixth Amendment Claims*

Russo has failed to allege any facts that support his claim that his rights under the First, Fourth, Fifth and Sixth Amendments have been violated. Therefore, summary judgment is granted and these claims are dismissed.

3. *Conspiracy Claim under 42 U.S.C. § 1985*

■ Russo also alleges that Commissioner Brown, the PPF and Personnel violated 42 U.S.C. § 1985 by conspiring to devise a policy that would deprive him of his pension. Section 1985(3) provides that:

> If two or more persons ... conspire ... for the purpose of depriving ... any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ..., whereby another is injured in his person or property ..., the party so injured or deprived may have an action for the recovery of damages ...

Actions under this statute must be based on a "racial or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Although § 1985 has been "liberated from the now anachronistic historical circumstances of reconstruction America," *De Santis v. Pacific Tel. & Tel. Co.*, 608 F.2d 327, 333 (9th Cir.1979), it still necessitates that the allegedly invidious discrimination be class-based. *See Maidman v. Regent House Tenants' Corp.*, slip op. at 4, 84 Civ. 6252, 1984 WL 1307 (Dec. 4, 1984); *White v. Frank*, 680 F.Supp. 629, 639 (S.D.N.Y.1988). Nevertheless, no decision

has been presented to this court indicating that retirees are a "class of persons" encompassed by this statute, if indeed that is the class of which Russo claims to be a member.

The real problem with this claim, however, is that Russo has failed to identify himself as the member of any class against which Defendants conspired. Rather, Russo's allegations relate to actions against him personally, as, for example, his claim that "this policy was enacted to prevent *him* [Russo] from receiving his pension benefits." Plaintiff's Memo in Opp. at 13. Russo has failed to present evidence of constitutionally impermissible discriminatory animus on the part of Defendants against any class. It seems clear, therefore, that the feud, if there is one, is individual; Russo has shown no general prejudice that transcends the immediate dispute. *Cf. Maidman*, slip op. at 5 (citing *Silkwood v. Kerr–McGee Corp.*, 637 F.2d 743, 748 (10th Cir.1980)). Section 1985(3) requires more.

4. *State Law Claims*

Because Defendants' motion for summary judgment dismissing Russo's federal claims is hereby granted, the court will not exercise jurisdiction over his pendent state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (2d Cir.1974) (absent "extraordinary circumstances," if federal claim is subject to dismissal under Rules 12(b)(6) or 56, Fed.R.Civ.P., court should refrain from exercising pendent jurisdiction).

*Conclusion*

For the foregoing reasons, Defendants' motion for summary judgment dismissing the complaint is granted.

It is so ordered.