OPINION OF THE COURT
 

 Bellacosa, J.
 

 Article V, § 7 of the New York State Constitution provides valued safeguards for public employees against the diminishment or impairment of pension rights which are fixed and determined by the laws and conditions in existence at the time membership in the pension system commences. We agree with the Appellate Division that chapter 890 of the Laws of 1976 did not violate that constitutional protection as to employees hired between July 27, 1976 and December 31, 1976— the individual appellants here joined in December 1976 — by conferring in a complementary prospective legislative package Tier II benefits only until December 31, 1976, at which time they matured into Tier III benefits.
 

 Appellants are two public employees — Nogas, employed by the County of Oneida, and Waterhouse, by the State — and their labor union representative (Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO). Nogas and Waterhouse were afforded benefits under the provisions of Retirement and Social Security Law article 11, commonly referred to as Tier II, until December 31, 1976 and thereafter to those under Tier III (Retirement and Social Security Law art 14). The tier downshift occurred automatically under the complementary pension package established in the single prospective legislative act designed to accommodate emergency circumstances (L 1976, ch 890, § 4 [Retirement and Social Security Law § 451]).
 

 This action was commenced seeking a judgment declaring that public employees who joined the Retirement System between July 1, 1976 and December 31, 1976 are members of Tier II and that the conversion to Tier III rights and benefits for such employees is violative of NY Constitution, article V, § 7. The trial court declared for plaintiffs and granted them ancillary, implementing relief as well.
 

 The Appellate Division reversed and declared that the ultimate classification of appellants Nogas and Waterhouse as Tier III members did not violate the constitutional protection.
 
 *657
 
 It reasoned that chapter 890 of the Laws of 1976, made contractual by operation of the Constitution, provided the appellants with a complementary package of pension rights and benefits including Tier II status only until January 1, 1977, and thereafter only those benefits conferred under Tier III. The Appellate Division qualified its holding by affording public employees who joined between July 1, 1976 and the date that chapter 890 was actually signed into law, July 27, 1976, permanent Tier II status. The plaintiffs’ appeal is as of right on substantial constitutional question grounds (CPLR 5601 [b] [1]). We affirm.
 

 Tier II was created by the Laws of 1973 (ch 382) for a period of three years only and was to lapse as an available category on June 30, 1976. The Legislature, engaged in negotiations over pension reform legislation, had not agreed upon a replacement system as of July 1, 1976. It thus passed an extension of Tier II (L 1976, ch 491). On July 27, 1976, Governor Carey signed a comprehensive pension reform bill (Retirement and Social Security Law art 14 [L 1976, ch 890]), which provided that Tier III status be afforded all employees hired after July 1, 1976 (Retirement and Social Security Law § 500 [ch 890, § 1]), retroactively directed permanent closure to Tier II as of July 1, 1976 (ch 890, § 5), and established January 1, 1977 as the effective date of Tier III (L 1976, ch 890, § 9). To bridge the period between the closure of Tier II and the effective date of Tier III, the new law provided that: "[notwithstanding * * * any other law, effective July first, nineteen hundred seventy-six, all benefits provided by an actuarially funded public retirement system of the state of New York or any municipality thereof shall continue with respect to
 
 members to which article fourteen
 
 is applicable
 
 only
 
 until December thirty-first, nineteen hundred seventy-six” (Retirement and Social Security Law § 451 [ch 890, § 4] [emphasis supplied]).
 

 We hold that simultaneously prescribing Tier III status to public employees who are preliminarily afforded Tier II rights and benefits does not constitute an unconstitutional impairment or diminution of a fixed public retirement contractual right as to those entering between July 27, 1976, the date of signing of chapter 890, and December 31, 1976. Their rights were fully established by the laws and conditions in effect when their membership commenced. Inclusion of a complementary and prospective condition in a definite, known and
 
 *658
 
 fixed pension package in these circumstances satisfies the constitutional protection and our precedents.
 

 New York Constitution, article V, § 7 was adopted in 1938 in response to
 
 Roddy v Valentine
 
 (268 NY 228). This court there held that retirement benefits were not contractual and could be legislatively altered until the member actually retired
 
 (see, Public Employees Fedn. v Cuomo,
 
 62 NY2d 450, 459;
 
 Birnbaum v New York State Teachers Retirement Sys.,
 
 5 NY2d 1, 8). In response to
 
 Roddy,
 
 article V, § 7 provides in pertinent part that "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which
 
 shall not be diminished or impaired”
 
 (NY Const, art V, § 7 [emphasis supplied]).
 

 The rights of public employees are thus fixed as of the time the employee becomes a member of the system. We have consistently held that the constitutional prohibition against diminishing or impairing retirement benefits "prohibits official action during a public employment membership in a retirement system which adversely affects the amount of the retirement benefits payable to the members on retirement
 
 under laws and conditions existing at the time of*** entrance into retirement system membership” (Birnbaum v New York State Teachers Retirement Sys., 5
 
 NY2d 1, 11,
 
 supra
 
 [emphasis supplied];
 
 Kleinfeldt v New York City Employees’ Retirement Sys.,
 
 36 NY2d 95, 101-102). Where "changes were applied retroactively to prior members of a public retirement system, they were held unconstitutional on the theory that a member’s rights were frozen as of the date of employment and that
 
 any changes lessening benefits must be made prospectively” (Public Employees Fedn. v Cuomo,
 
 62 NY2d 450, 460,
 
 supra
 
 [emphasis supplied];
 
 Matter of Central School Dist. No. 2 v New York State Teachers’ Retirement Sys.,
 
 23 NY2d 213, 232 [no benefit, once enacted, may later be discontinued]).
 

 In securing a public employee’s retirement rights, "[t]he Constitution does not, in terms or otherwise, preserve naked pension rights
 
 qua
 
 rights but, rather, the benefits of the contractual relationship (i.e., 'a contractual relationship, the benefits
 
 of which
 
 shall not be diminished or impaired’ [emphasis supplied]). Thus, we must look to the contract for both the source and the definition of plaintiff’s benefits”
 
 (Mutterperl v Levitt,
 
 89 Misc 2d 428, 431,
 
 affd on opn of Gibson, J.,
 
 41 NY2d 956). The contractual relationship governing persons joining the Retirement System between July 27, 1976 and December
 
 *659
 
 31, 1976 is fully established by the Laws of 1976 (ch 890). That enactment was the operative "law and condition” at the time appellants acquired membership. While the Tier III component of chapter 890 (i.e., ch 890, § 1) had an effective date of January 1, 1977, other sections completed the plenary and constitutionally preserved contractual relationship for the appellant employees. Chapter 890 thus created a prospective complementary rights and benefits package, fixed for members who joined the system during the relevant period: Tier II benefits "only until” December 31, 1976 (L 1976, ch 890, § 4; Retirement and Social Security Law § 451) and thereafter Tier III benefits. Insofar as the staggered retirement package established the rights of those who acquired membership between July 27 and December 31, the automatic shift of such employees to Tier III rights in no way constitutes a diminishment or impairment of the contractual rights conferred at the time of membership
 
 (see, Mutterperl v Levitt, supra,
 
 at 431;
 
 Birnbaum v New York State Teachers Retirement Sys., 5
 
 NY2d 1, 11,
 
 supra).
 

 Appellants contend, however, that the Legislature intended permanent Tier II status for members joining through December 31, 1976, and that Tier III was to apply only to members joining after December 31, 1976. They also assert that restriction to Tier III benefits for them is prohibited by our decisions in
 
 Public Employees Fedn. v Cuomo
 
 (62 NY2d 450,
 
 supra)
 
 and
 
 Kleinfeldt v New York City Employees’ Retirement Sys.
 
 (36 NY2d 95,
 
 supra).
 

 The legislation at issue is not ambiguous in respect to the issue we must decide and on its face it is contrary to appellants’ argument
 
 (see, Doctors Council v New York City Employees’ Retirement Sys.,
 
 71 NY2d 669 [decided today]). Moreover, the legislative history of chapter 890 confirms a comprehensive package creating "a new retirement program for employees hired on or after July 1, 1976” (Governor’s Message of Approval, 1976 McKinney’s Session Laws of NY, at 2455). The Permanent Commission on Public Employee Pension and Retirement Systems noted, in recommending approval by the Governor, that "[t]he second effect of the amendment to Section 451 is to make Article 11 available for employees who joined or rejoined a public retirement system after July 1, 1976, but only until December 31, 1976. Thus, new employees will be temporarily eligible for benefits under Article 11 until CO-ESC [Tier III] takes effect on January 1, 1977. This should give the various retirement systems sufficient time to imple
 
 *660
 
 ment the new retirement plan” (Mem, July 15, 1976, Governor’s Bill Jacket, L 1976, ch 890;
 
 see also,
 
 Mem of Robert J. Morgado, Secretary to Governor, Governor’s Bill Jacket, L 1976, ch 890). The legislative history of chapter 890 demonstrates that at the time of enactment the legislation was understood to create a complementary package under which new employees would receive Tier II rights only until Tier III could be made operational.
 

 Finally,
 
 Public Employees Fedn. v Cuomo
 
 (62 NY2d 450,
 
 supra)
 
 and
 
 Kleinfeldt v New York City Employees’ Retirement Sys.
 
 (36 NY2d 95,
 
 supra)
 
 support this analysis and result. In
 
 Public Employees (supra),
 
 we declared that retirement rights and benefits enacted for a "temporary” period could not be constitutionally diminished or impaired
 
 by subsequent legislation
 
 passed after the sunset provision set. The "temporary period” addressed in
 
 Public Employees (supra)
 
 referred to the limited duration of the retirement system tier enacted with its own specific sunset provision; there was no self-contained complementary new sunrise component there. That situation was therefore quite different from the express component scheduled to evolve during the life of and as an integral part of the statute in this case. Thus, the transition from the ephemeral period of coverage under Tier II rights to Tier III rights in this case was prospectively and simultaneously effectuated by the contractual (statutory) provisions in existence as of the date of employees’ membership. This shift in tier classification was not a Retirement System vicissitude and was by no rendering the forbidden "temporary” pension fruit under
 
 Public Employees Fedn. (supra).
 

 Chapter 890 has a retroactive effective date of July 1, 1976, though it was not signed into law until July 27, 1976. As the Appellate Division has noted, application of the law’s provisions to Retirement System members prior to July 27, 1976, would be a forbidden retroactive application which would diminish the rights of persons under the Tier II provisions then in existence. Thus, the effective date of chapter 890 for purposes of deciding this lawsuit should be July 27, 1976, as the Retirement System acknowledges in its brief and as
 
 Kleinfeldt v New York City Employees’ Retirement Sys.
 
 (36 NY2d 95,
 
 supra)
 
 teaches
 
 (see, Matter of Oliver v County of Broome,
 
 113 AD2d 239,
 
 Iv denied
 
 67 NY2d 607,
 
 appeal dismissed
 
 67 NY2d 1027). That, of course, does not entitle appellants Nogas and Waterhouse to any relief as they were hired
 
 *661
 
 in December 1976, well within the constitutionally authorized legislative scheme.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone, and Hancock, Jr., concur.
 

 Order affirmed, with costs.