Requestor: Hon. Edward V. Regan, State Comptroller Alfred E. Smith State Office Building Albany, New York 12236
Written by: Robert Abrams, Attorney General
Your counsel has asked whether the provisions and limitations contained in sections 449, 515 and 611 of the Retirement and Social Security Law cap the amount of contributions required to be paid by public employers under sections 182, 392 and 6252 of the Education Law on behalf of employees of the State University (SUNY), City University (CUNY) and the State Education Department who are members of the Teachers Insurance Annuity Association-College Retirement Equities Fund (TIAA-CREFF), an optional retirement program of the State available only to members of the aforesaid entities.
This optional retirement program was established in the 1960s (L 1968, ch 1076; L 1964, ch 337; L 1965, ch 1028). It is a defined contribution plan through which employees' pension benefits are determined solely by the return on the contributions made on their behalf. Attorney General's Opinion No. 91-F2. The public employers are not liable for the payment of pension benefits. Education Law § 186, 396 and 6255. However, sections 182, 392 and 6252 of the Education Law require that they "shall" during the continuance of employment of an employee participating in an optional retirement program:
 ". . . make contributions at the rate of nine percentum of that portion of his salary [up to a maximum of $16,500] upon which [social security] contributions, if any, are or may hereafter be paid . . . and at the rate of twelve percentum of any portion of his salary upon which such contributions are not paid."
In 1973, article 11 (§§ 440, et seq.) of the Retirement and Social Security Law was added for the purpose of imposing limitations on the cost of public employee pensions. Legislative Bill Jacket, L 1973, ch 382.
Section 449 of article 11 provides in pertinent part:
 "The maximum rate of contribution that a public employer may make to an optional retirement program on behalf of an employee who commences employment on or after July first, nineteen hundred seventy-three, shall be equal to the rate of contribution that such employer would make if such employee joined the retirement system otherwise available to him had such optional retirement program not been available . . . ".
Section 440 provides:
 "Notwithstanding any other provision of law, the provisions and limitations of this Article shall apply, as may be appropriate, to all members who join or rejoin a public retirement system of the state or of a municipality thereof, and to all employees who would be eligible to join such a retirement system but in lieu thereof elected an optional retirement program to which their employees are thereby required to contribute, on or after July first, nineteen hundred seventy-three, but prior to July first, nineteen hundred seventy-six. In the event that there is a conflict between the provisions of this Article and the provisions of any other law or code, the provisions of this Article shall govern."
Additionally, articles 14 (§§ 500 et seq.) and 15 ( §§ 600 et seq.) were added to the Retirement and Social Security Law in 1976 and 1983, respectively, and impose limitations on the pensions of public employees who, after a certain date in 1976, joined or rejoined a public retirement system or would have been eligible to do so if they had not elected an optional retirement program. Retirement and Social Security Law §§500(a), 600(a). These articles also contain provisions on the maximum rate of contribution to an optional retirement program similar to that contained in section 449. Retirement and Social Security Law §§ 515(b) and 611(b).
The Legislature's intent is crucial in determining whether the provisions of the Retirement and Social Security Law cap the amount of contributions that public employers are required to make to an optional retirement program under the Education Law. After carefully examining the clear language of the relevant provisions, it is apparent that the Legislature intended that the cap on contributions to an optional retirement program contained in articles 11, 14 and 15 of the Retirement and Social Security Law applies to all optional retirement programs, including those established under the provisions of the Education Law.
Section 440 of article 11 of the Retirement and Social Security Law states that the "provisions and limitations" of that article "shall apply, as may be appropriate, . . . to all employees who would be eligible to join such a retirement system but in lieu thereof elected an optional retirement program . . .". Sections 500(a) and 600(a) of Articles 14 and 15, respectively, contain essentially the same language, except for the deletion of the "as may be appropriate" language. When these sections are read together with sections 449, 515 and 611, as they must because they deal with the same subject matter, they show that the Legislature intended that the maximum rate of employer contribution for "all employees" participating in an optional retirement program "shall be subject to the rate of contribution . . . if such employee joined the retirement system". No optional retirement program is exempted from these clear provisions. Indeed, both when the caps on contributions to optional retirement programs were enacted and now, so far as we are aware the only such programs offered are those in the Education Law. Thus, sections 449, 515(b) and 611(b) would have no meaning if they do not apply to these provisions.
Although we agree with your counsel's view that the provisions of Retirement and Social Security Law §§ 449, 515 and 611 control over Education Law § 182, 392 and 6252, that does not end our inquiry. Indeed, we do not believe that the maximum rate of contribution to an optional retirement program can properly be set routinely on an annual basis, as your counsel implicitly suggests. The provisions of the Retirement and Social Security Law are silent as to the period of time over which the maximum rate of contribution to an optional retirement program must be equalized with the rate of contribution to a public retirement system.
As your counsel also informed us, the public retirement systems are defined benefit plans. Under a defined benefit plan, the members receive fixed pension benefits regardless of the amount of contributions made on their behalf. Thus, a defined benefit plan is significantly different from a defined contribution plan where the members' pension benefits are dependent on the amount of contributions made to the plan. See, Attorney General's Opinion No. 91-F2 for a fuller discussion of the differences in these plans. While the extant legislative history on the cap provisions provides us no guidance, it is evident that the Legislature was aware of the differences in funding defined benefit plans and defined contribution plans.
Thus, as your counsel also noted, the rate of contribution to a public retirement system can fluctuate significantly from one year to another based upon factors such as investment experience and the funding methods and billing practices employed. This means that in any given year those contributions could be either above or below the statutory ceiling under the Education Law. Indeed, experience has shown, according to your counsel, that in several years in the 1970s the contribution rate to the public retirement systems was below that ceiling. By contrast, SUNY advises us that during much of the 1980s those contributions were much in excess of those ceilings. Of course, the contributions have recently dropped markedly. Indeed, it could be zero or near zero for any given year. In these circumstances, your counsel stated that you ". . . recognize the inappropriateness of basing the employer contribution to the optional retirement plan . . . on the employer contribution rate of a public retirement system . . .". Nevertheless, your office concluded that the cap should be applied, presumably on a year-by-year basis.
We disagree. A statute must, of course, be construed in accordance with the intent of the Legislature. In doing so, it should, whenever possible, be construed rationally and in such manner as would not create unnecessary hardship. McKinney's Statutes, §§ 94, 146. Because of the significant differences between the two types of pension plans and the fluctuation from year to year in the rate of contribution to the public retirement system, we believe that it would be irrational to construe the maximum cap on contributions as requiring annual adjustments. Adjustments over a longer period of time would ameliorate harsh year-to-year fluctuations and still meet the statutory objective of limiting the government employer's obligations of not paying out more for the optional retirement programs than for the public retirement systems.
Since no full history of employer contributions under both types of plans has been provided to us, we will not speculate on whether payments below the ceiling rates prescribed by the Education Law are now warranted.
Finally, we agree with your counsel that the maximum contribution cap does not violate the provisions of Article V, § 7 of the New York State Constitution or the equal protection clauses of the State and Federal Constitutions. Article V, § 7 of the State Constitution provides safeguards "against the diminishment or impairment of pension rights which are fixed and determined by the laws and conditions in existence at the time membership in the pension system commences". CivilService Employees Association v Regan, 71 N.Y.2d 653, 656 (1988). The provisions of articles 11, 14 and 15 of the Retirement and Social Security Law establishing the maximum contributions cap clearly fix the rights of persons who thereafter join or rejoin the retirement system or elect to participate in an optional retirement program. They do not diminish or impair the rights of persons who were already members of a public retirement system or who had elected to participate in an optional retirement program. 71 N.Y.2d at 658.
Likewise, there is no basis to conclude that the maximum contribution cap violates the equal protection clauses of the State and Federal Constitutions. It is supported by the dual presumption of constitutionality and that the Legislature investigated and found such facts as were necessary to support the legislation. See, Brown v New York State Teachers Retirement System, 107 A.D.2d 103, 109 (3d Dept 1985), lv denied, 66 N.Y.2d 601 (1985).
We conclude that the provisions and limitations contained in sections 449, 515 and 611 of the Retirement and Social Security Law cap the amount of contribution required to be paid by public employers under sections 182, 392 and 6252 of the Education Law on behalf of employees participating in an optional retirement program. However, the maximum contribution cap should be determined on a long-term basis, not on an annual basis. These provisions do not violate Article V, § 7 of the New York State Constitution or the equal protection clauses of the State and Federal Constitutions.