Matter of McGarrigle v City of New York (2004 NY Slip Op 50652(U))

[*1]

Matter of McGarrigle v City of New York

2004 NY Slip Op 50652(U)

Decided on June 18, 2004

Supreme Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 18, 2004

Supreme Court, New York County
In the Matter of the Application of DAVID McGARRIGLE and THE CORRECTION OFFICERS' BENEVOLENT ASSOCIATION, Petitioners, For a Judgment and Order Pursuant to Article 78 of the Civil Practice Law and Rules,
against
CITY OF NEW YORK and NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, Respondents.
116942-02

For petitioners: Mercedes Maldonado, Esq., Koehler & Isaacs, LLP, 120 Broadway - 29th Floor, New York, New York 10271. For respondents: Magda Deconinck, Esq., % NYC Corporation Counsel, 100 Church Street, New York, New York 10007

Rosalyn Richter, J.
In 1982, petitioner David McGarrigle was appointed a correction officer in the New York City Department of Correction ("DOC"), at which point he became a member of respondent New York City Employees' Retirement System ("NYCERS"). In 1991, McGarrigle chose to participate in the "Twenty-year retirement program for New York city correction members below the rank of captain", which entitled him to retirement benefits upon completion of twenty years of "credited service". See Retirement and Social Security Law ("RSSL") § 504-a.
In 2001, McGarrigle wished to retire, but did not yet have twenty years of "credited service". Under RSSL § 1000, a member of NYCERS can purchase up to three years of "service credit" towards retirement for up to three years of prior military duty. In order to satisfy the twenty year requirement, McGarrigle purchased nine months of prior military service rendered from November 1974 through August 1975.[FN1] On August 10, 2001, McGarrigle retired from the DOC with the requisite twenty years of "credited service", nine months of which constituted "bought back" prior military service.
Under RSSL § 504-a[c][2], a correction officer who retires with twenty years of "credited service" is entitled to a pension equal to one-half of his or her "final average salary". "Final average salary" is defined as "the average wages earned . . . during any three consecutive years which provide the highest average wage". RSSL § 512. During his employment as a correction officer, McGarrigle's salary was adjusted on two occasions to reflect certain "longevity [*2]increases". In 1987, McGarrigle became entitled to a longevity increase upon his completion of five years of service as a correction officer. In 1992, McGarrigle earned a longevity increase based upon his completion of ten years of correction officer service.
In calculating McGarrigle's "wages earned" for purposes of determining his "final average salary", NYCERS did not include the longevity payments earned by McGarrigle upon reaching his fifth and tenth years of correction service. In this Article 78 proceeding, McGarrigle challenges NYCERS decision to exclude the longevity payments and contends that NYCERS' determination violates the provisions of the RSSL as well as the pension impairment clause of the New York State Constitution (Article V, § 7).Respondents NYCERS and the City of New York (collectively "NYCERS") concede that the longevity adjustments were not included in the calculation of McGarrigle's final average salary. NYCERS contends, however, that the non-pensionability of the longevity increments is mandated by the collective bargaining agreement ("CBA") entered into between petitioner Correction Officers' Benevolent Association ("COBA"), McGarrigle's union, and the City of New York.[FN2]
The pension impairment clause of the New York State Constitution provides that "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired. NYS Constitution, Article V, § 7. This provision "provides valued safeguards for public employees against the diminishment or impairment of pension rights which are fixed and determined by the laws and conditions in existence at the time membership in the pension system commences". Civil Service Employees Assoc. v. Regan, 71 N.Y.2d 653, 656 (1988).
The Court of Appeals has "consistently held that the constitutional prohibition against diminishing or impairing retirement benefits 'prohibits official action during a public employment membership in a retirement system which adversely affects the amount of the retirement benefits payable to the members on retirement under laws and conditions existing at the time of . . . entrance into retirement system membership'". Civil Service Employees Assoc. v. Regan, 71 N.Y.2d at 658, quoting Birnbaum v. New York State Teachers Retirement Sys., 5 N.Y.2d 1, 11 (1958). Thus, in order to prevail on his claim that the exclusion of longevity adjustments from his pension calculation violates the pension impairment clause of the State Constitution, McGarrigle must show that "'some benefit set forth in the pension contract . . . is diminished or impaired'". Gagliardo v. Dinkins, 89 N.Y.2d 62, 72 (1996), quoting Poggi v. City of New York, 109 A.D.2d 265, 269 (1st Dept. 1985).
Here, there is no question that longevity payments ordinarily should be included in the calculation of a retiree's "final average salary". A retiree's "final average salary" is based upon "wages earned". RSSL § 512. "Wages" is defined as "regular compensation earned by and paid to a member [of the retirement system] by a public employer." RSSL § 501[24]. Thus, the longevity increments earned by McGarrigle upon reaching his fifth and tenth years of correction service became part of his annual salary and thus constitute "regular compensation". NYCERS appears to support this view by its characterization of the longevity adjustments as "compensation increases in stated annual amounts". November 29, 2002 Deconinck [*3]Affirmation, ¶ 12. Thus, as a general rule, the longevity increments must be included as part of the retiree's "final average salary" for purposes of computing the pension benefit. See Ahr v. City of New York, 243 A.D.2d 293 (1st Dept.1977)(longevity payments are "funds ordinarily included in the calculation of pension benefits").
Nevertheless, NYCERS argues that McGarrigle, through the collective bargaining agreement, has waived his right to the pensionability of the longevity increases. There is no question that a collective bargaining unit, such as COBA, may waive its members constitutional pension impairment rights as to funds ordinarily included in the calculation of pension benefits. See Schacht v. New York, 39 N.Y.2d 28 (1976); Ahr v. City of New York, 243 A.D.2d at 293; Rosen v. New York City Teachers' Retirement Bd., 282 A.D. 216 (1st Dept. 1953). The agreement here provides that the longevity adjustments "shall not be computed as salary for pension purposes until after completing 20 years of service" (emphasis added). The term "service", however, is not defined in the agreement. NYCERS argues that the phrase "20 years of service" means twenty years of correction service, which McGarrigle admittedly does not have. McGarrigle, on the other hand, contends that the phrase means twenty years of "credited service" for pension purposes, which he unquestionable does have.
The question before the Court is whether the disputed language operates as an effective waiver of McGarrigle's statutory and constitutional right to have his longevity payments included in his pension calculation. The Court concludes that it does not. As the party asserting the waiver defense, NYCERS has the burden of showing that the term "20 years of service" meant twenty years of correction service and that McGarrigle thus waived his rights to the pensionability of his longevity payments. See Board of Education of the City of Rochester v. Nyquist, 48 N.Y.2d 97, 104 (1979)(burden of demonstrating that bargaining agreement contemplated something that the statute did not was on the party making such a claim); City of New York v. State of New York, 40 N.Y.2d 659, 669(1976)(the party asserting waiver has the burden of establishing that a waiver occurred); Rosenthal v. City of New York, 283 A.D.2d 156 (1st Dept. 2001)(municipal defendants have the burden of establishing that labor unions effectively waived rights secured to them by statute).
The Court concludes that NYCERS has failed to meet its burden. NYCERS asserts that it has "always" deferred to the Commissioner of the New York City Office of Labor Relation's ("OLR") "consistent" interpretation that the term "20 years of service" in the CBA means twenty years of actual service as a correction officer. Furthermore, NYCERS maintains that any ambiguity in the disputed language is dispelled by COBA's knowledge that NYCERS would interpret the language to mean twenty years of pure correction service. In order to fully examine the history of NYCERS' and OLR's interpretation of the phrase "20 years of service", the Court ordered a fact hearing to explore how and to what extent NYCERS and OLR have interpreted the provision in the past, and the parties' understanding, at the time instant CBA was negotiated and entered into, of NYCERS' and OLR's interpretation.
Despite being afforded an evidentiary hearing and several opportunities to brief the issue, NYCERS has failed to convince this Court that OLR or NYCERS had a long-standing or consistent interpretation of the disputed language, or that representatives of COBA were aware of that interpretation at the time the CBA was entered into. To begin, NYCERS has not submitted any affidavit from a representative of OLR, nor did they call any witnesses from OLR at the [*4]hearing. Thus, the Court is unable to ascertain what, if anything, led OLR to conclude that the disputed term referred to correction service only. Indeed, the Court does not know if OLR did anything more than just read the CBA that is the subject of this litigation.
The witnesses that did testify at the hearing did not sufficiently describe any long-standing policy nor did they provide adequate proof that COBA had knowledge of OLR's interpretation of the disputed language. Kenneth Godiner, an assistant director of New York City's Office of Management and Budget, testified that he was responsible for "costing" labor contract proposals, and had, since 1987, personally attended five different collective bargaining sessions between COBA and the City. Mr. Godiner testified that during these sessions, COBA was provided with a spreadsheet containing an analysis of the pension costs of the CBA's longevity increments. According to Mr. Godiner, in preparing the spreadsheet, the City made the "assumption" that only actual correction service would be used to determine whether a member met the twenty year threshold at which the longevity increases would be pensionable. Mr. Godiner testified that since the spreadsheet used the member's entry date into DOC as the basis for determining whether the member had reached twenty years, it was clear on its face that only actual correction service was contemplated.
NYCERS argues that since COBA was provided with the spreadsheet at the bargaining negotiations, it was aware of the City's "assumption". This argument fails for a number of reasons. To begin, it is unclear from Mr. Godiner's testimony whether COBA actually received the spreadsheet. He stated that he was "not certain" and that he "might be mistaken" about his belief that COBA representatives were consulted when the costing methodology was developed. Although he stated that the City "regularly communicated" the costing analysis to COBA and that he "believed" the spreadsheet was provided to COBA, he did not provide any specifics as to when the document was provided or to whom it was given.
Nor is it clear that COBA was specifically alerted to the assumptions underlying the spreadsheet calculations. When asked if COBA representatives were aware of the assumptions contained on the spreadsheet, Mr. Godiner simply answered that he "believed" that they were, and that he could not recall whether COBA objected to the assumptions. However, Mr. Godiner did not describe any specific conversations where the assumptions about the term "years of service" were discussed with COBA. Moreover, there was no explanatory text contained on the spreadsheet, nor any other supporting documentation provided to COBA, which would have explicitly made the City's assumption apparent. Indeed, when Mr. Godiner was asked where in the spreadsheet was it made clear that longevity increases are pensionable only after twenty years of correction service, Mr. Godiner conceded that "[y]ou won't find that in here."
The validity of the assumption underlying the spreadsheet's figures was seriously undercut by testimony Mr. Godiner gave on cross-examination. After repeatedly stating that the longevity analysis on the spreadsheet was based solely on correction service, Mr. Godiner was asked to review a number of "side letters" to the CBA which allowed for transferees from the Police Department, Fire Department, and Housing Police Department to supplement their correction service with their prior service in those agencies for longevity purposes. After reviewing the side letters, Mr. Godiner conceded that longevity payments could be earned and pensionable based on service other than correction service, and that the spreadsheet did not account for such situations. It is clear to this Court that, as with any such planning document, the [*5]spreadsheet was merely a projection of pension costs, and could not have included every possible scenario, such as the purchase of past fire department and police service, or, as is relevant here, prior military service. Thus, the Court concludes that the spreadsheet does not provide sufficient evidence that COBA was specifically aware that the City would later take the position that longevity payments are only pensionable after twenty years of correction service.
The remaining witnesses at the hearing did not provide any relevant testimony which would have shown that COBA was aware the City's interpretation of the disputed term. Ira Kleinburd, section supervisor of DOC's payroll management department, testified that in his experience, no correction officer has earned longevity pay based upon prior military service. However, the issue before the Court is the pensionability, not the earning of longevity pay. It is undisputed that McGarrigle earned the right to longevity payments after five and ten years as a correction officer, and that he did not seek to use his military service to be entitled to longevity earnings. Since Mr. Kleinburd testified that he has nothing to do with retirement benefits, his testimony sheds no light on the issues here. Likewise, Karen Mazza, general counsel for NYCERS, had no involvement in the collective bargaining process, and thus could not testify as to COBA's understanding of the term "20 years of service".
There is no doubt that a union's waiver in a CBA of statutory and constitutional rights must be "clear" and "unmistakable". Wright v. Universal Maritime Service Corp., 525 U.S. 70 (1998). See also Fuentes v. Shevin, 407 U.S. 67, 95 (1972)(waiver of constitutional rights in any context must, at the very least, be clear); L. K. Comstock & Co. v. New York Convention Center Dev. Corp., 179 A.D.2d 322 (1st Dept. 1992)(under certain conditions a constitutional right may be waived by contract but that waiver must be clear). A review of the CBA leaves no doubt that the disputed language is ambiguous. As noted, the CBA provides that longevity payments "shall not be computed as salary for pension purposes until after completing 20 years of service" (emphasis added). In light of the fact that the term "service" is not defined in the agreement, it is possible, as the City contends, that the phrase "twenty years of service" could be interpreted to mean correction service only. However, it is also possible to interpret the term, as COBA argues, to mean "credited service", which is a term of art under the pension law, particularly in light of the fact the disputed language sets forth the years of service necessary to include longevity pay "for pension purposes". Because the term can be interpreted in two different ways, it is clearly ambiguous.
Ms. Mazza's testimony underscored the ambiguity of the disputed phrase. She testified that NYCERS reviews the relevant CBA in order to determine whether longevity payments are pensionable. She testified that NYCERS consults OLR if they have a question regarding the interpretation of the CBA that cannot be resolved by simply looking at the language. She further stated that in 1999, such a question arose as to the pensionability of a correction captain's longevity earnings under similar language in the corrections captains' CBA, and that NYCERS sought an opinion from OLR. Clearly, the fact that NYCERS could not interpret the term by reviewing the language of the contract highlights the ambiguity of the term. Indeed, in a letter dated May 25, 1999, Milton Aron, Deputy Director of Operations at NYCERS, explicitly concedes that the term "years of service" is "ambiguous". And in an October 18, 2001 e-mail, Norman Rosenfeld, from NYCERS Data and Benefit Certification Unit, states that the issue is "currently under consideration" and that NYCERS' procedure to exclude non-correction service [*6]"may change depending on the decisions made".
In light of the ambiguity of the language, the lack of a consistent interpretation by NYCERS and OLR, and no proof that COBA agreed with the assumptions purportedly contained in the spreadsheet, the Court must construe the disputed term in McGarrigle's favor and therefore find that there was no valid waiver of the pensionability of his longevity payments . See Sanders v. New York City Transit Authority, 130 Misc.2d 719 (N.Y.City Civ. Ct. 1985)("[i]n the face of two possible interpretations, one not providing for waiver of a significant statutory protection, the presumption must be against waiver"). Accordingly, it is
ORDERED and ADJUDGED that this Article 78 petition is granted; and it is
ORDERED and ADJUDGED that NYCERS shall re-calculate McGarrigle's pension benefit, prospectively and retroactively, so as to include in the calculation of "final average salary" the longevity payments earned by him upon his completion of five and ten years correction service; and it is further
ORDERED that the Clerk is directed to enter judgment accordingly.
 This constitutes the decision and judgment of the Court.
Justice Rosalyn Richter
June 18, 2004
The appearances are: For petitioners: Mercedes Maldonado, Esq., Koehler & Isaacs, LLP, 120 Broadway - 29th Floor, New York, New York 10271. For respondents: Magda Deconinck, Esq., % NYC Corporation Counsel, 100 Church Street, New York, New York 10007
Footnotes

Footnote 1: McGarrigle served in the United States Military as a Military Policeman from November 1974 to November 1977.

Footnote 2: In a previous decision, the Court ordered that the parties to the collective bargaining agreement, COBA and the City of New York, be joined as parties in this proceeding.