■ In the Matter of DAVID McGARRIGLE et al., Respondents, v CITY OF NEW YORK et al., Appellants. [803 NYS2d 529]—

Order and judgment (one paper), Supreme Court, New York County (Rosalyn Richter, J.), entered June 25, 2004, after a hearing, annulling respondents' calculation of McGarrigle's pension, and directing respondents to recalculate the pension, unanimously affirmed, without costs.

In 1990, the Legislature created a 20-year retirement program for New York City correction members below the rank of captain (Retirement and Social Security Law § 504-a). McGarrigle became a member of that program in 1991, after electing to join it rather than the distinct retirement program he had joined in 1982. In 1991, and at all times thereafter, one of the benefits of McGarrigle's membership in the 20-year retirement program was the right to a pension of 50% of his final average salary upon completion of "twenty or more years of credited service" (*see* Retirement and Social Security Law § 504-a [c] [1] [i]).

As the Court of Appeals stated in *Ballentine v Koch* (89 NY2d 51, 56 [1996]): "Article V, § 7 of the NY Constitution protects as 'a contractual relationship' the benefits of membership in a public pension or retirement system against diminishment and impairment. The provision 'fix[es] the rights of the employees at the time of commencement of membership in [a pension or retirement] system, rather than as previously at retirement' (*Matter of Guzman v New York City Employees' Retirement Sys.*, 45 NY2d 186, 190-191, citing *Birnbaum v New York State Teach-*

*ers Retirement Sys.*, 5 NY2d 1, 9), and thus prohibits unilateral action by either the employer or the Legislature that impairs or diminishes the rights established by the employee's membership (*Matter of Village of Fairport v Newman*, 90 AD2d 293, 295, *appeal dismissed* 58 NY2d 1112)."

Respondents concede that McGarrigle retired with 20 years of "credited service"; nine months consisted of military service with the federal government, as permitted by Retirement and Social Security Law § 513 (c). At all relevant times, the term "final average salary" has been defined as "the average wages earned by . . . a member [of a public retirement system] during any three consecutive years which provide the highest average wage" (Retirement and Social Security Law § 512 [a]). Respondents do not dispute that the City gave McGarrigle longevity adjustments after 5 and 10 years of service.

The current dispute between the parties arose following McGarrigle's retirement, when respondent New York City Employees' Retirement System (NYCERS) determined that McGarrigle was not entitled to have the 5- and 10-year longevity adjustments included in his final average salary for purposes of computing his pension. According to respondents, McGarrigle is not entitled to have those longevity adjustments included because the collective bargaining agreement between petitioner Correction Officers' Benevolent Association (COBA) and the City states, "The adjustment after the 5th and 10th years of service shall not be computed as salary for pension purposes until after completing 20 years of service." Respondents contend that "service," which is not defined in the agreement, means service in the title of correction officer. It is undisputed that McGarrigle does not have 20 years of service in the title of correction officer. Accordingly, respondents argue before this Court, as they did below, that because the Office of Labor Relations has consistently interpreted this 20-year requirement to mean 20 years of actual service as a correction officer, NYCERS properly excluded McGarrigle's 5- and 10-year longevity adjustments from the calculation of his pension payment.

Respondents' argument begs the logically prior question of whether McGarrigle had a constitutionally protected contractual right, as of the time he joined the 20-year retirement program, to a pension equal to 50% of his final average salary after 20 years of "credited service." If McGarrigle has such a constitutionally protected right, respondents' defense to his unconstitutional impairment claim reduces to the contention that the impairment is lawful because the City has consistently impaired his constitutionally protected right.

The controlling issue on this appeal is a pure question of law: the meaning of the phrase "credited service." The parties cite no cases construing this term, but we need not and do not resolve it given respondents' concession. As noted, respondents concede that McGarrigle in fact retired with 20 years of credited service. Thus, respondents can prevail only if McGarrigle waived the protection of article V, § 7 (*see e.g. Ballentine*, 89 NY2d at 58).

Although respondents note that they did not raise the defense of waiver in their answer, they can prevail only if McGarrigle did waive. Waiver is not merely implicit in their arguments; respondents explicitly argue in their brief that a collective bargaining unit may waive its members' constitutional pension rights. Here, however, no waiver can be found. The very collective bargaining agreement on which respondents rely expressly states as follows: "This Agreement is not intended and shall not be construed as a waiver of any right or benefit to which Correction Officers are entitled by law." Even if the agreement had not contained such a provision, respondents' current interpretation of "service" is not the only possible meaning of that term; this unqualified term could also include the narrower term, "credited service." This ambiguity is fatal to respondents' argument.

To be sure, as McGarrigle's collective bargaining agent, COBA had the authority to waive the constitutional protections of article V, § 7, and a waiver may be implied from the course of conduct of the parties to collective bargaining negotiations (*see Ballentine*, 89 NY2d at 58). Respondents, who bore the burden of proving waiver (*see e.g. City of New York v State of New York*, 40 NY2d 659, 669 [1976]; *Rosenthal v City of New York*, 283 AD2d 156, 160 [2001], *lv dismissed* 97 NY2d 654 [2001]), did not show that COBA agreed that the term "service" has the meaning that respondents now ascribe to it. Respondents' current position, moreover, is scarcely consistent with the City's express agreement to the language of the collective bargaining agreement providing that it "is not intended and shall not be construed as a waiver of any right or benefit to which Correction Officers are entitled by law." Finally, respondents point to side letters between COBA and the City which provide that service in the police and fire departments would be treated as correction service. Given the equivocal meaning of the term "service" and the express "no-waiver" provision of the collective bargaining agreement, respondents' reliance on the side letters is unavailing. The import of the letters is itself ambiguous, as COBA may have entered into them out of an excess of caution.

Concur—Tom, J.P., Marlow, Ellerin, Williams and McGuire, JJ. [*See* 4 Misc 3d 1004(A), 2004 NY Slip Op 50652(U).]