OPINION OF THE COURT
Michael D. Stallman, J.
Motions bearing sequence Nos. 007 and 008 are consolidated for disposition.
In motion sequence No. 007, petitioner the Correction Officers’ Benevolent Association (COBA) moves, pursuant to CPLR 901, for an order certifying itself as the class representative of all COBA tier 3 members hired between July 26, 1976 and December 19, 1990, who retired with credited service. Motion sequence No. 008 is the restored and recalendared CPLR article 78 proceeding, based on petitioners’ amended verified petition, which petitioners assert is a “hybrid” article 78 proceeding and declaratory judgment action. In the article 78 proceeding, COBA and petitioner Michael DeBlasio seek an order declaring unlawful the policy and practice of respondent New York City Employees’ Retirement System (NYCERS) whereby NYCERS *791 requires 20 years of correction officer service, rather than credited service, in order for 5th and 10th year longevity earnings to be pensionable, and whereby NYCERS requires 25 years of correction officer service, rather than credited service, in order for 5th, 10th, 15th and 20th year longevity earnings to be pensionable.
Petitioners also seek an order compelling NYCERS: (1) to recalculate, retroactive to March 29, 2003, the pensions of all correction officers who retired with 20 years of credited service to include their 5th and 10th year longevity earnings, if any, in the computation of their final average salaries; and (2) to recalculate, retroactive to March 29, 2003, the pensions of all correction officers who retired with 25 years of credited service to include their 5th, 10th, 15th and 20th year longevity earnings, if any, in the computation of their final average salaries.
Background
On March 29, 1982, DeBlasio was hired as a correction officer by the New York City Department of Correction. On that same date, he became a member of NYCERS.
In 1990, the New York State Legislature enacted a program titled the “Twenty-year retirement program for New York city correction members below the rank of captain,” pursuant to section 504-a of the Retirement and Social Security Law. DeBlasio opted to become a member of that program.
The program provides that each member is entitled to receive a pension equal to fifty percent of his or her “final average salary” upon retirement with 20 years of “credited service.” (See Retirement and Social Security Law § 504-a [c].) Final average salary is defined as the average wages earned by the member during any three consecutive years which provide the highest average wage. (Retirement and Social Security Law § 512 [a].)
DeBlasio retired on February 1, 2002, with 20.98 years of credited service. Specifically, NYCERS credited him with 19.8 years of service as a correction officer and 1.139 years of prior service with the New York City Parks Department.
By letter dated May 10, 2002, NYCERS informed DeBlasio that his pension would be $31,477 per year. DeBlasio, believing that amount to be too low, filed a complaint with NYCERS on May 28, 2002, seeking an explanation as to how it had arrived at the amount of his pension.
In a letter dated March 21, 2003, NYCERS informed DeBlasio that it had reviewed his case and determined that no revisions *792 were needed with regard to the calculation of his final average salary.[1] Among other things, the letter contained a table listing DeBlasio’s salaries for the years 1997 through 2002, demonstrating how his final average salary was calculated. NYCERS specifically noted that it did not include “longevity earnings” in the final average salary calculation.
Longevity earnings are compensation increases which are afforded to correction officers pursuant to the collective bargaining agreement (CBA) established by COBA and the City of New York. Pursuant to articles VI and VIII of the CBA, longevity adjustments are awarded to correction officers after 5, 10, 15 and 20 years of service.
Article VIII § 1(c) of the CBA provides that longevity adjustments after the 5th and 10th years would not be computed as salary for pension purposes until after the officer completed 20 years of service. The 15th and 20th year adjustments would not be computed as salary for pension purposes until after the officer completed 25 years of service. Significantly, the CBA does not provide a definition of the term “service.”
In the March 21, 2003 letter, NYCERS stated that DeBlasio had less than 20 years of service as a correction officer. As such, NYCERS determined that his longevity earnings were “non-pensionable” under the terms of the CBA. DeBlasio then commenced this article 78 proceeding on July 28, 2003, asserting that NYCERS violated article V § 7 of the New York State Constitution by failing to include his 5th and 10th year longevity earnings in the calculation of his final average salary.
On November 26, 2003, this proceeding was marked off the calendar without prejudice to renewal, pending the outcome of a proceeding titled Matter of McGarrigle v City of New York, which also involved the exclusion of longevity payments in the calculation of a member’s final average salary. That proceeding eventually resulted in a judgment in favor of the petitioners, which was affirmed by the Appellate Division, First Department. (See Matter of McGarrigle v City of New York, 4 Misc 3d 1004[A], 2004 NY Slip Op 50652[U] [Sup Ct, NY County 2004], affd 23 AD3d 196 [1st Dept 2005].) The judgment became final on June 6, 2006, when the Court of Appeals denied respondents’ motion for leave to appeal. (See 7 NY3d 701 [2006].)
On January 11, 2007, this court restored the instant proceeding to the calendar and respondents served an answer to the pe *793 tition on March 9, 2007. COBA was joined as a necessary party on November 1, 2007.
McGarrigle Decision
David McGarrigle became a correction officer in 1982 and, as such, also became a member of NYCERS. In 1991, McGarrigle elected to participate in the “Twenty-year retirement program for New York city correction members below the rank of captain.” (Retirement and Social Security Law § 504-a.)
In 2001, McGarrigle decided to retire, but he did not yet have 20 years of credited service. Pursuant to Retirement and Social Security Law § 1000, he purchased nine months of prior federal military service rendered from November 1974 through August 1975. Thereafter, on August 10, 2001, he retired with the requisite 20 years of credited service. However, NYCERS excluded McGarrigle’s 5th and 10th year longevity payments when it calculated his final average salary.
In July of 2002, McGarrigle commenced an article 78 proceeding challenging the decision to exclude the longevity payments. McGarrigle contended that such a decision violated article Y, § 7 of the New York State Constitution, as well as certain relevant provisions of the Retirement and Social Security Law. NYCERS argued that the nonpensionability of the longevity increments was mandated by the CBA.
In a decision dated June 18, 2004, the Supreme Court, per Justice Rosalyn Richter, granted McGarrigle’s petition and ordered NYCERS to recalculate McGarrigle’s pension benefit “so as to include in the calculation of ‘final average salary’ the longevity payments earned by him upon his completion of five and ten years correction service.” (Matter of McGarrigle v City of New York, 4 Misc 3d 1004[A], 2004 NY Slip Op 50652[U], *6.)
In reaching its decision, the court first noted that longevity payments are ordinarily included in calculating a retiree’s final average salary. (2004 NY Slip Op 50652[U], *3, citing Matter of Ahr v City of New York, 243 AD2d 293 [1st Dept 1997].) This is because such salary is based upon “wages earned” and the term “wages” is defined as “regular compensation earned by and paid to a member . . . by a public employer.” (2004 NY Slip Op 50652[U], *2, quoting Retirement and Social Security Law § 501 [24]; § 512.) Longevity increments, once earned, become part of the member’s annual salary and therefore constitute regular compensation. (Id.)
NYCERS had asserted that McGarrigle had waived his right to the pensionability of the longevity payments through the *794 CBA, which provided that such payments would not be included as salary for pension purposes until the member completed 20 years of service. (Id.) Although, as noted above, the CBA does not define the term service, NYCERS argued that service should be construed to mean 20 years of purely correction service, which McGarrigle indisputably did not have. (Id.) NYCERS contended that it had historically deferred to the Commissioner of the New York City Office of Labor Relations (OLR) “consistent” interpretation of the term “service” to mean 20 years of actual service as a correction officer. (2004 NY Slip Op 50652[U], :;:3.) NYCERS also asserted that COBA knew that NYCERS would interpret the language of the CBA to mean 20 years of pure correction service. (Id.)
McGarrigle argued that the phrase should be construed to mean 20 years of “credited service,” which he indisputably did have, as a result of his purchase of his earlier military service. (2004 NY Slip Op 50652[U], *3.)
After conducting a factual hearing, the court found that NYCERS failed to demonstrate that the term “20 years of service” meant 20 years of correction service. (Id.) The court found that the term “service” was ambiguous, and could be defined as meaning either correction service only, or “credited service,” which could include service other than as a correction officer. (2004 NY Slip Op 50652[U], *5.)
In light of such ambiguity, the court further found that NYCERS failed to demonstrate that COBA had waived its members’ rights to the pensionability of the longevity payments by executing the CBA. (Id.) Among other things, NYCERS failed to demonstrate that “OLR or NYCERS had a long-standing or consistent interpretation of the disputed language, or that representatives of COBA were aware of that interpretation at the time the CBA was entered into.” (2004 NY Slip Op 50652[U], *3.) As such, the court ordered NYCERS to recalculate McGarrigle’s pension benefit to include the longevity payments in the calculation of his final average salary. (2004 NY Slip Op 50652[U], *6.)
In a decision dated November 3, 2005, the Appellate Division, First Department, affirmed Justice Richter’s decision. (See Matter of McGarrigle v City of New York, 23 AD3d 196 [2005], supra.) First, the court found that the term “service,” as used in the CBA, was ambiguous. (Id. at 198.) The court then found that NYCERS had failed to demonstrate that COBA had agreed that the term “service” meant only service as a correction offi *795 cer, and that COBA had therefore waived any of its members’ rights by executing the CBA. (Id.) The court noted that the CBA specifically states that it “is not intended and shall not be construed as a waiver of any right or benefit to which Correction Officers are entitled by law.” (Id.)
Instant Proceeding
In the instant proceeding, DeBlasio alleges that NYCERS violated article V, § 7 of the New York State Constitution by failing to include his 5th and 10th year longevity earnings in the calculation of his final average salary. NYCERS argues that the longevity payments are not pensionable, pursuant to the terms of the CBA, because DeBlasio did not complete 20 years of service as a correction officer. NYCERS argues that DeBlasio, through COBA, waived any rights to the pensionability of such payments by agreeing to the terms of the CBA.
Article V, § 7 of the New York State Constitution, also referred to as the Pension Impairment Clause, provides that “membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired.” “The rights of public employees are thus fixed as of the time the employee becomes a member of the system.” (Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v Regan, 71 NY2d 653, 658 [1988].)
The Court of Appeals has
“consistently held that the constitutional prohibition against diminishing or impairing retirement benefits ‘prohibits official action during a public employment membership in a retirement system which adversely affects the amount of the retirement benefits payable to the members on retirement under laws and conditions existing at the time of .. . entrance into retirement system membership.’ ” (Id., quoting Birnbaum v New York State Teachers Retirement Sys., 5 NY2d 1, 11 [1958].)
Initially, petitioners contend that, based on the decisions in the McGarrigle proceeding,
“collateral estoppel bars [NYCERS] from claiming that Article VIII, section 1 of the collective bargaining agreement waives an officer’s right to have his or her 5th and 10th year longevity earnings be pensionable on retiring with 20 years of credited service or to have his or her 5th, 10th, 15th and *796 20th year longevity earning[s] be pensionable on retiring with 25 years of credited service.” (Amended petition ¶ 29.)
“Collateral estoppel applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.” (Alamo v McDaniel, 44 AD3d 149, 153 [1st Dept 2007]; see MHR Capital Partners LP v Presstek, Inc., 55 AD3d 12 [1st Dept 2008].)
“While the proponent of collateral estoppel has the burden of demonstrating that the issue in question is identical and decisive, it is the opponent’s burden to show the absence of a full and fair opportunity to litigate the issue in the prior determination.” (Alamo v McDaniel, 44 AD3d at 154.)
In McGarrigle, NYCERS and the City fully and fairly litigated the issue of whether the term “service,” as set forth in the CBA, required each member to complete 20 years of service solely as a correction officer in order to have longevity payments included in the calculation of his or her final average salary. Both the trial court and the Appellate Division found that the term was ambiguous. (See Matter of McGarrigle v City of New York, 4 Misc 3d 1004[A], 2004 NY Slip Op 50652[U] [2004], supra, affd 23 AD3d 196 [2005], supra.) Therefore, NYCERS and the City are precluded from arguing here that the term “service,” on its face, requires 20 years of service as a correction officer in order for longevity payments to be pensionable.
NYCERS and the City also fully and fairly litigated the issue of whether COBA somehow waived its members’ rights to the pensionability of the longevity payments. That issue was thoroughly explored by Justice Richter through a factual hearing which resulted in the court’s finding that the City and NYCERS had failed to demonstrate that a waiver had occurred. That finding was affirmed by the First Department. Therefore, respondents cannot now argue that COBA waived its members’ rights to the pensionability of the longevity payments.
The court further finds that, even if collateral estoppel were not applicable here, respondents have not demonstrated that longevity payments must be excluded from the calculation of a member’s final average salary when the member has not completed 20 years of service solely as a correction officer.
*797 First, as noted by Justice Richter, longevity payments are ordinarily included in calculating a retiree’s final average salary. (Matter of McGarrigle v City of New York, 2004 NY Slip Op 50652[U],*3, citing Matter of Ahr v City of New York, 243 AD2d 293 [1997], supra.) The issue therefore is whether the CBA requires exclusion of such longevity payments under the circumstances present here.
Respondents argue, as in McGarrigle, that the term “service,” as used in the CBA, means service solely as a correction officer. As such, they contend that COBA, by agreeing to the CBA, waived its members’ rights to have longevity payments included in the calculation of their final average salaries in cases where the member retired with less than 20 years of service as a correction officer.
A waiver is an intentional relinquishment of a known right, which should not be lightly presumed. (Braddock v Braddock, 60 AD3d 84 [1st Dept 2009].) As set forth above, the CBA does not provide a definition of the term “service.” One might argue that the term “service” can be construed to mean service only as a correction officer, as respondents contend. However, it can be construed more broadly, to encompass “credited service,” which would include prior military service, as in McGarrigle, or prior civil service, as in the instant proceeding. Given such possible interpretations, the term is clearly ambiguous, as found by both Justice Richter and the First Department in McGarrigle. (See Matter of McGarrigle v City of New York, 4 Misc 3d 1004[A], 2004 NY Slip Op 50652[U] [2004], supra, affd 23 AD3d 196 [2005], supra.)
In light of such ambiguity, respondents cannot demonstrate that the CBA, on its face, excludes longevity payments from the calculation of a member’s final average salary in cases where the 20 years of credited service are not entirely as a correction officer. For the same reasons, respondents, therefore, cannot demonstrate that COBA waived the pensionability of such payments by agreeing to the terms of the CBA.
NYCERS argues that the instant proceeding is distinguishable from the McGarrigle proceeding because McGarrigle involved prior federal military service as opposed to the prior civilian service at issue here. However, in both cases, the member was permitted by law to purchase such prior service in order to satisfy the requirement for 20 years of credited service. NYCERS has not demonstrated any distinction in the types of service such as would warrant a different outcome here.
*798 NYCERS also argues that DeBlasio failed to exhaust his administrative remedies by failing to file a grievance under the CBA. It is well-settled that a party objecting to an act of an administrative agency must exhaust his or her available administrative remedies before litigating in a court of law. (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978].) However, this rule need not be followed under certain circumstances, such as when the agency’s action is challenged as unconstitutional. (Id.)
Here, the amended petition clearly asserts that NYCERS actions violated article V, § 7 of the New York State Constitution. As such, DeBlasio was not required to exhaust any further administrative remedies before litigating in this court.[2]
Class Certification
In motion sequence No. 007, COBA moves, pursuant to CPLR 901, for an order certifying it as the class representative of all COBA tier 3 members hired between July 26, 1976 and December 19, 1990, who retired with credited service. Respondents argue that the motion for class certification is untimely because it was made more than 60 days after respondents filed an answer to the petition in March of 2007.
CPLR 902 provides that “[w]ithin sixty days after the time to serve a responsive pleading has expired for all persons named as defendants in an action brought as a class action, the plaintiff shall move for an order to determine whether it is to be so maintained.” “The explicit design of article 9 ... is that a determination as to the appropriateness of class action relief shall be promptly made at the outset of the litigation.” (O’Hara v Del Bello, 47 NY2d 363, 368 [1979]; see Shah v Wilco Sys., Inc., 27 AD3d 169, 173 [1st Dept 2005].)
The court is not persuaded that the motion for class certification should be deemed untimely. On November 26, 2003, in the interests of judicial economy, this court permitted the parties to stipulate to mark this proceeding off the calendar without prejudice to renew, pending a decision in the McGarrigle proceeding. As such, the instant proceeding was inactive until January 11, 2007, when the court restored it to the calendar and directed respondents to serve an answer to the petition. Given the unusual circumstances present here, the court finds that it would be unfair to hold petitioners to an unduly narrow view of the time limitation period.
*799 Respondents argue that, in any event, petitioners have not satisfied certain of the criteria for class action status set forth in CPLR 901 (a). Specifically, respondents argue that petitioners have not satisfied CPLR 901 (a) (5), which requires that a class action must be superior to other available methods for the fair and efficient adjudication of the controversy at issue. Respondents assert that class certification is not a superior method for adjudicating the issues here because this proceeding involves “government operations,” i.e., respondents’ operation of the pension system.
“ ‘It is well settled that a class action is not considered the superior method for the fair and efficient adjudication of a controversy against a governmental body.’ ” (Matter of Jones v Board of Educ. of Watertown City School Dist., 30 AD3d 967, 970 [4th Dept 2006], quoting Board of Educ. of City School Dist. of City of New Rochelle v County of Westchester, 282 AD2d 561, 562-563 [2d Dept 2001].) This is because, in general, “any relief granted to an individual petitioner challenging a governmental operation will adequately flow to others similarly situated under principles of stare decisis.” (Davis v Croft, 237 AD2d 163, 163 [1st Dept 1997]; see Mahoney v Patcki, 98 NY2d 45 [2002]; Jamie B. v Hernandez, 274 AD2d 335 [1st Dept 2000].)
Petitioners do not dispute that this proceeding involves government operations. However, they argue that class certification is nevertheless warranted under the circumstances here. Petitioners rely on several cases involving government operations in which class certification was granted.
Under certain circumstances, class action certification may be appropriate even where government operations are concerned. For instance, class certification is warranted in situations where the government entity has “revealed a ‘demonstrated reluctance’ to extend mandated relief to parties other than the individual plaintiffs before the court.” (Ousmane v City of New York, 7 Misc 3d 1016[A], 2005 NY Slip Op 50634[U], *11 [Sup Ct, NY County 2005], quoting Matter of Legal Aid Socy. v New York City Police Dept., 274 AD2d 207, 213 [1st Dept 2000].) Here, however, petitioners have not demonstrated that respondents have been, or will be, unwilling or reluctant to extend relief to any subsequent petitioners who are affected by the Mc-Garrigle decision or who will be affected by a decision in the instant proceeding.
Class certification may also be appropriate in cases involving small amounts of money and a well-defined and limited group of *800 plaintiffs. (See e.g. Beekman v City of New York, 65 AD2d 317 [1st Dept 1979] [firemen who retired because of disabilities seeking to recover payments for earned terminal leave and accrued vacation time].) In such cases, class action status is preferable because the cost of bringing individual actions would be prohibitive, given the relatively small amount of money sought by any given individual plaintiff. Further, in such cases, the administrative burden on the government agency to provide relief to the members of the class is likely to be minimal, since the class is limited and well defined.
In Ousmane v City of New York (7 Misc 3d 1016[A], 2005 NY Slip Op 50634[U] [2005], supra), the court approved class certification for street vendors who challenged the promulgation of an increased penalty schedule for violations of rules regulating the sale of food and merchandise in public spaces. Class certification was warranted because the proposed class was limited and well defined and the City could easily identify the vendors and the amounts that they were seeking to be reimbursed and “provide the relief necessary with minimal administrative burden” (2005 NY Slip Op 50634[U], at *12). The court noted that it might be particularly difficult for the individual vendors, many of whom were indigent and many of whom were recent immigrants, to obtain individual relief. (Id.)
Here, COBA has not adequately demonstrated that the proposed class is so well defined or limited as to warrant class certification. COBA provides a list of 95 names of retirees who have indicated to COBA that they met their 20- or 25-year service requirements using credited service and allowable correction service and thus might be eligible for a recalculation of their pensions. However, COBA speculates that there may be as many as 3,870 other potential class members, which is the number of retirees who were hired between July 26, 1976 and December 19, 1990. COBA states that it does not maintain records that would enable it to identify all of the retirees who met their 20- or 25-year service requirements using credited service and allowable correction service.
COBA has also not demonstrated that the administrative burden on respondents would be minimal. As set forth above, COBA is unable to identify all of the retirees who met their 20- or 25-year service requirements using credited service and allowable correction service. Instead, it asserts that respondents should examine the records of the nearly 4,000 potential class members to determine which of them might qualify for recalculation of their pensions.
*801 The court also finds that COBA has not demonstrated that it would be unduly burdensome or prohibitive for individual retirees to seek a recalculation of their pensions from NYCERS. COBA states, in a conclusory manner, that all of the potential class members are on a limited income and that they are geographically disbursed throughout the United States. However, COBA does not put forth any evidence to support the inference based on this assertion, that individual retirees would be unable to seek such recalculation.
In light of the factors discussed above, the court finds that COBA has not demonstrated that a class action is the superior method for adjudicating this proceeding.
In any event, the court also finds that COBA has not demonstrated that it is an appropriate representative for the proposed class. CPLR 901 (a) (3) requires that “the claims or defenses of the representative parties [be] typical of the claims or defenses of the class.” “Typical claims are those that arise from the same facts and circumstances as the claims of the class members.” (Globe Surgical Supply v GEICO Ins. Co., 59 AD3d 129, 143 [2d Dept 2008], citing Ackerman v Price Waterhouse, 252 AD2d 179, 181 [1st Dept 1998]; see Pruitt v Rockefeller Ctr. Props., 167 AD2d 14, 22 [1st Dept 1991].)
The issue in this proceeding is whether NYCERS improperly excluded noncorrection service in determining the pensionability of longevity payments. As respondents point out, COBA is an association rather than an individual. As such, COBA itself is not a NYCERS member, does not have any accrued service time and is not eligible to receive a pension. Thus, COBA indisputably does not have any claims to assert against NYCERS. Therefore, it cannot be said that COBA is asserting claims against NYCERS which are typical of the proposed class as required by CPLR 901 (a) (3).
Despite this, COBA argues that it is a proper class representative because, according to COBA, “[t]he requirements of typicality overlap in substantial part with the requirements for associational standing.” (Petitioner’s mem of law at 7.) This is unpersuasive.
“Associational standing” refers to an organization’s standing to commence certain actions or proceedings on behalf of its members. (See New York State Assn. of Nurse Anesthetists v Novello, 2 NY3d 207, 211 [2004]; Matter of Dental Socy. of State of N.Y. v Carey, 61 NY2d 330 [1984].) Here, even assuming that COBA would have “associational standing” to bring certain ac *802 tions on behalf of its members, it has not demonstrated that this renders it an appropriate class representative in the instant proceeding. As set forth above, COBA cannot demonstrate that it is asserting claims that are typical of the members of the proposed class. The fact that COBA may or may not have standing to bring certain other actions on behalf of its members does not render it an adequate representative in a class action pursuant to CPLR 901.
Conclusion
Accordingly, it is ordered that the petition is granted as to petitioner DeBlasio to the extent indicated herein; and it is further adjudged and declared that it is unconstitutional and unlawful for the New York City Employees’ Retirement System to have required correction service, rather than credited service, as the measure of petitioner DeBlasio’s eligibility for inclusion of longevity earnings in the calculation of his final average salary for pension calculation; and it is further adjudged and declared that petitioner DeBlasio is entitled to have his pension recalculated based on all credited service, thereby including in the calculation of his final average salary, all longevity payments received by DeBlasio during his employment; and it is further ordered that respondents are directed to recalculate De-Blasio’s pension in accordance with the decision, judgment and declaration set forth above; and it is further ordered that COBA’s motion for class certification is denied.

. NYCERS did find that revisions were required with respect to DeBlasio’s annuity account which resulted in refunds to him of certain monies.

. Justice Richter reached the same conclusion in McGarrigle in an interim order dated July 18, 2003.